RICHARD M. WILLIAMS (SBN 68032)
GREGORY M. GENTILE (SBN 142424)
J. MARK THACKER (SBN 157182)
ROPERS, MAJESKI, KOHN & BENTLEY
80 North First Street
San Jose, CA 95113
Telephone: (408) 287-6262
Facsimile: (408) 918-4501

Attorneys for Defendant
GLOBAL EQUITY LENDING INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOLORES A. ARREGUIN, for herself and other members of the general public similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GLOBAL EQUITY LENDING, INC., a Georgia Corporation; and DOES 1 through 10, Inclusive,<br><br>Defendant. | CASE NO. C 07 6026 MHP<br><br>**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF SANDRA CROTEAU**<br><br>Date: March 3, 2008<br>Time: 2:00 p.m.<br>Courtroom: 15, 18th Floor<br>Judge: Hon. Marilyn Hall Patel<br><br>Complaint filed: November 29, 2007 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 3, 2008, at the hour of 2:00 p.m., in Courtroom 15 of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California, 94102, the Honorable Marilyn Hall Patel, presiding, defendant GLOBAL EQUITY LENDING, INC., ("GLOBAL") will move to compel arbitration on the grounds that the Agreement in effect between Plaintiff and GLOBAL during the relevant time frame alleged in the complaint provided that all disputes arising out of or related to the agreement shall be subject to arbitration.

Said motion will be based on the attached Memorandum of Points and Authorities in Support of Motion to Compel Arbitration, the Declaration of Sandra Croteau, and such other

Support of Motion to Compel Arbitration, the Declaration of Sandra Croteau, and such other papers and pleadings as may be on file in this action.

Dated: January 17, 2008

ROPERS, MAJESKI, KOHN & BENTLEY

By: _____
J. MARK THACKER
Attorneys for Defendant
GLOBAL EQUITY LENDING INC.

RC1/5056849.1/DB
NOTICE OF MOTION TO COMPEL ARBITRATION
- 2 -
CASE NO. C 07 6026 MHP

RICHARD M. WILLIAMS (SBN 68032)
GREGORY M. GENTILE (SBN 142424)
J. MARK THACKER (SBN 157182)
ROPERS, MAJESKI, KOHN & BENTLEY
80 North First Street
San Jose, CA 95113
Telephone: (408) 287-6262
Facsimile: (408) 918-4501

Attorneys for Defendant
GLOBAL EQUITY LENDING INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOLORES A. ARREGUIN, for herself and other members of the general public similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GLOBAL EQUITY LENDING, INC., a Georgia Corporation; and DOES 1 through 10, Inclusive,<br><br>Defendant. | CASE NO. C 07 6026 MHP<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Date: March 3, 2008<br>Time: 2:00 p.m.<br>Courtroom: 15, 18th Floor<br>Judge: Hon. Marilyn Hall Patel<br><br>Complaint filed: November 29, 2007 |

I

**INTRODUCTION**

In order to avoid any potential for Plaintiff's counsel to argue that Defendant GLOBAL EQUITY LENDING, INC. (hereinafter referred to as "GLOBAL") has waived its rights to compel arbitration in this matter, GLOBAL brings this motion concurrently with its motion to dismiss for improper venue. It is anticipated that in the event this Court grants GLOBAL's motion to dismiss for improper venue, there will be no need to rule on this motion. Therefore, this motion is brought in the alternative. If the Court denies GLOBAL's motion to dismiss based on improper venue, GLOBAL respectfully requests the Court to consider and grant this motion.

Based on Plaintiff's complaint, Plaintiff's claims arise out of an alleged employment relationship with GLOBAL. That relationship is governed by an agreement ("Agreement") which includes provisions by which the parties agree to submit all claims "arising out of or relating to this Agreement" to arbitration. By filing this action, Plaintiff has unambiguously manifested an intention not to arbitrate these claims. Therefore, GLOBAL brings this motion to compel arbitration and to stay this action.

## II

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff's complaint alleges that she was employed by GLOBAL from approximately July, 2002 to July 10, 2007. [Complaint, ¶ 7.] All of Plaintiff's claims arise out of her alleged employment relationship with GLOBAL and are based on Plaintiff's allegations that she is entitled to be indemnified by GLOBAL for certain expenditures incurred in the use of her personal automobile in the course and scope of her employment. [Complaint, ¶¶ 8-12.]

Although not alleged in the complaint, Plaintiff's relationship with GLOBAL is governed by the Agreement which includes provisions requiring that any claim arising out of or relating to the Agreement must be resolved exclusively by arbitration. [Declaration of Sandra Croteau, ¶¶ 10-21, 24-26, Exhibit "A".] Specifically, the arbitration provisions of the Agreement state, in part, as follows:

> 7. <u>Arbitration of Grievances</u>.
>
> 7.1 <u>General</u>. **The Parties agree that, except as specifically provided to the contrary in this Agreement, any controversy, claim or dispute arising out of or relating to this Agreement ("Grievance"), between the [Plaintiff], on the one part, and [GLOBAL], and any of its officers and employees, or any of them, on the other part, shall be resolved exclusively by arbitration in accordance with this Paragraph 7. . . .** all Grievances unresolved in the normal course of business, to the extent that any Party wishes to pursue the matter further, shall be resolved by arbitration in accordance with the Commercial Arbitration Rules ("Rules") of the American Arbitration Association then in effect, except that, or in addition to such rules: i) in order to insure neutrality and impartiality of the arbitrator(s), and to preserve the confidentiality of proprietary information, the arbitrator(s) shall not be any present or past owner, officer, director, employee, consultant, contractor, agent, attorney or other representative of any mortgage company, mortgage broker,

mortgage banker, or of any affiliate of any of them; ii) the locale where the arbitration shall be held is the principal business location of [GLOBAL] in Norcross, Georgia; iii) a transcript shall be made of the proceeding; and iv) the arbitrator's(s') award shall state their findings of fact and conclusions of law. The award including such findings and conclusions may be reviewed, vacated, modified or corrected upon application or petition of any Party brought within thirty (30) days after the date of the award, by a court of competent jurisdiction, provided that in addition to the grounds stated in the United States Arbitration Code, 9 U.S.C. § 1, and following, or any other applicable law or statute, the court may also vacate, modify or correct the award if the conclusions of law are contrary to law, or if the findings of fact are not supported by the facts (as determined by whether there was any pertinent and material evidence to support the findings). Otherwise, or in compliance with the court's review, the decision of the arbitrator(s) shall be final and binding. Judgment upon the award rendered by the arbitrator(s) or judgment upon the award as reviewed by the court, may be entered in any court having jurisdiction therefore.

7.2 <u>Waiver of Litigation</u>. **The parties acknowledge and agree that they are engaged in, and that this Agreement evidences transactions involving, interstate commerce**, and that, except as specifically provided to the contrary in this Agreement, this paragraph 7 is and shall be the Party's exclusive remedy for any Grievance arising out of or relating to this Agreement, or the breach thereof. Except as specifically provided to the contrary in this Agreement, the Parties expressly waive the right to litigate in a judicial forum Grievances and waive the right to trial by jury. The Parties further agree that the findings of fact issued by the arbitrator(s), as reviewed, if applicable, shall be binding on them in any subsequent arbitration, litigation, or other proceeding. [Emphasis added.]

### III

### LEGAL ARGUMENT

A. **THE FEDERAL ARBITRATION ACT REQUIRES THE ENFORCEMENT OF THE PARTIES' ARBITRATION PROVISIONS.**

GLOBAL's motion to compel arbitration is governed by the Federal Arbitration Act. That Act provides that contractual agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." [9 U.S.C. § 2.] The primary congressional purpose of the Federal Arbitration Act is "to insure judicial enforcement of privately made agreements to arbitrate." [*Dean Witter Reynolds, Inc. v. Byrd* (1985) 470 U.S. 213, 219.] The Act "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to

proceed to arbitration on issues as to which an arbitration agreement has been signed." [*Id.* at 218.]

The United States Supreme Court has interpreted the Federal Arbitration Act as creating a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. [*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.* (1983) 460 U.S. 1, 24.] The Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language, or an allegation of waiver, delay, or a like defense to arbitrability. [*Id.* at 25.]

Moreover, the Federal Arbitration Act provides that if the court where the action is pending is:

> satisfied that the issue involved in such suit or proceeding is referable to arbitration . . . . [the court] **shall** on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration. [9 U.S.C. § 3. (Emphasis added).]

Accordingly, if the court determines that the dispute between the parties is arbitrable, the Act **requires** the court to stay the action pending arbitration. [*See, Wagner v. Stratton Oakmont, Inc.* (9th Cir. 1996) 83 F. 3rd 1046, 1048.]

### 1. Plaintiff's claims are within the scope of the arbitration provisions.

The scope of the arbitration provisions in the Agreement are broad enough to include the claims alleged by Plaintiff in her complaint. The Agreement uses the "broad form" language providing that "any controversy, claim or dispute arising out of or relating to this Agreement . . . shall be resolved exclusively by arbitration . . . ." [Declaration of Sandra Croteau, ¶ 15, Exhibit "A", ¶ 7.1.] This language has been interpreted by the courts as broad enough to cover virtually any claim in any way related to the subject matter of the agreement. [*Fleet Tire Service of North Little Rock v. Oliver Rubber Co.* (8th Cir. 1997) 118 F. 3rd 619, 621 (referring to similar language as follows: "Such a provision constitutes the broadest language the parties could reasonably use to subject their disputes to that form of settlement, including collateral disputes that relate to the

RC1/5054869.1/DB
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL
- 4 -
CASE NO. C 07 6026 MHP

agreement containing the clause.").] For example, in *Vianna v. Doctor's Management Co.* (1994) 27 Cal.App.4th 1186, 1189, similar language was interpreted to include tort claims related to the employment relationship. [*See also, Buckhorn v. Saint Judge Heritage Medical Group* (2004) 121 Cal.App.4th 1401, 1406-1407 (broad form arbitration language included tort claims for defamation and interference with prospective business advantage based on events occurring **after** the employee's termination.).]

In this case, Plaintiff's claims arise out of and are related to her alleged employment relationship with GLOBAL. That relationship between Plaintiff and GLOBAL is governed by the Agreement. Plaintiff claims that as a direct consequence of that relationship, she is entitled to compensation for expenses she incurred in the course and scope of her alleged employment with GLOBAL. Therefore, Plaintiff's claims are subject to the arbitration provisions of the Agreement.

### 2. The Agreement involves interstate commerce.

The Federal Arbitration Act provides for enforcement of arbitration provisions in any contract "evidencing a transaction involving commerce." [9 U.S.C. § 2.] The United States Supreme Court has interpreted the term "involving commerce in the Act as "the functional equivalent of the more familiar term affecting commerce – – words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." [*The Citizens Bank v. Alfabco, Inc.* (2003) 539 U.S. 52, 56.] Accordingly, the Act provides for the enforcement of arbitration provisions "within the full reach of the Commerce Clause" and moreover, "encompasses a wider range of transactions than those actually 'in commerce'." [*Maddox v. USA Healthcare-Adams, LLC* (M.D. Ala. 2004) 350 F. Supp. 2nd 968, 973-974, *quoting Perry v. Thomas* (1990) 482 U.S. 483, 490-491, and *The Citizens Bank v. Alfabco, Inc., supra*, 539 U.S. at 56.] Furthermore, Congress may exercise its powers under the Commerce Clause "'in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent 'a general practice . . . subject to federal control.'" [*Maddox v. USA Healthcare-Adams, LLC, supra*, 350 F. Supp.2nd at 973-974, *quoting The Citizens Bank of Alfabco, Inc., supra*, 539 U.S. at 57.] Consequently, according to

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL - 5 - CASE NO. C 07 6026 MHP

the *Maddox* court:

> If an organization engages in business across state lines, has a portion of its assets generated as a result of any activity across state lines, or engages in any business that may be regulated by the Congress pursuant to powers granted in the Commerce Clause, then FAA jurisdiction is the appropriate mechanism for settling a dispute where a valid arbitration agreement has been executed. [*Maddox v. USA Healthcare-Adams, LLC, supra,* 350 F. Supp. 2nd at 974.

In *Baer v. The Terminex International Company, L.P.* (1997) 975 F. Supp. 1272, the plaintiff purchased a termite service plan from Terminex for his home located in Kansas. In doing so, the plaintiff executed a contract which included an arbitration provision. Terminex was a Delaware limited partnership headquartered in Tennessee, doing business in all 48 states of the continental United States. [*Id.* at 1275.] The plaintiff argued that the interstate commerce requirement of the Federal Arbitration Act was not satisfied because he resided in Kansas, his home was in Kansas, the services were provided in Kansas, he dealt with Terminex representatives who were local residents, and the contractor hired for repairs was a local resident. [*Id.* at 1278.] The court rejected this argument finding that the interstate commerce requirement of the Act was satisfied based on the fact that Terminex had its headquarters in Tennessee and had operations in 48 states. The court further noted that the chemicals used to treat the plaintiff's home were manufactured in Missouri, transported to Tennessee, and then shipped to Kansas. [*Id.*] The court further reasoned that, "[r]ather than limiting consideration to the plaintiff's duties and expectations under the contract, the courts have generally 'focused on the nature of the defendant's business': (Citations omitted.) The interstate character of Terminex here is enough to satisfy the interstate commerce element of the FAA." [*Id.*]

In *Jenkins v. First American Cash Advance of Georgia, LLC* (11th Cir. 2005) 400 F. 3rd 868, the plaintiff entered into several "payday" loans, each of which involved the execution of an agreement containing an arbitration clause. The *Jenkins* court held that the Federal Arbitration Act interstate commerce requirement was satisfied because the transactions were between the plaintiff who was a Georgia resident and the defendant, which was a national bank located in South Dakota. Additionally, loan applications were electronically transmitted to South Dakota

for the defendant's approval. If approved, the defendant would transmit to the borrowers pre-printed loan agreements. The *Jenkins* court found that the defendant's role in analyzing the applications, transmitting the approved applications, funding the loans, and accepting the loan proceeds "constitutes sufficient interstate commerce to satisfy the definition of 'involving commerce' within the meaning of 9 U.S.C. §§ 1, 2." [*Id.* at 875-876.]

Similarly in our case, it is clear that the interstate commerce requirement is satisfied. Initially, it should be recognized that the parties have acknowledged that in performing pursuant to the Agreement they "are engaged in, and that this Agreement evidences transactions involving, interstate commerce . . . ." [Declaration of Sandra Croteau, ¶ 15, Exhibit "A", ¶ 7.2.]

Moreover, in the performance of her duties, Plaintiff was clearly involved in interstate commerce. In fact, she generated or supervised as field trainer loans not only in California, but also Florida, Ohio, Texas, Alabama, Virginia and Nevada. [Declaration of Sandra Croteau, ¶¶ 22 and 23, Exhibit "B".[1]]

Additionally, GLOBAL is a corporation formed and operating in Georgia, and maintains its principal place of business in Johns Creek, Georgia. [Declaration of Sandra Croteau, ¶ 2.] GLOBAL does business as a mortgage broker and mortgage lender for both residential and commercial loans. [Declaration of Sandra Croteau, ¶ 3.] GLOBAL has business relationships with other mortgage lenders and often acts as a broker for loans funded by lenders other than GLOBAL. These lenders maintain home offices in states other than Georgia, including California, and Rhode Island. [Declaration of Sandra Croteau, ¶ 4.] GLOBAL maintains business operations in all States except New York, and is current with the licensing requirements of each such state.

Furthermore, GLOBAL is approved by the Federal Housing Authority and the Veterans Administration to act as a broker or lender for FHA and VA loans. [Declaration of Sandra Croteau, ¶¶ 5 and 6.] GLOBAL administers its national operations from its home offices in Johns Creek, Georgia. It processes the majority of loan applications from its home offices.

---

[1] The names and street addresses of the borrowers, and the names and ID numbers of GLOBAL's representatives other than Plaintiff have been redacted from Exhibit "B".

RC1/5054869.1/DB
MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANT'S MOTION TO COMPEL
- 7 -
CASE NO. C 07 6026 MHP

Those loan applications that are not processed in its home offices are processed by loan processing centers employed by GLOBAL and located in several states, including California, Massachusetts, Florida, Washington, New Jersey, North Carolina, and Oregon. [Declaration of Sandra Croteau, ¶¶ 7 and 8.] Furthermore, the loans generated by or under the supervision of Plaintiff pursuant to the Agreement are subject to federal regulation pursuant to, among others, the Federal Equal Credit Opportunity Act and its Regulation B, and the Federal Truth-In-Lending Act and Regulation Z. [15 U.S.C. § 1691 et seq.; 15 U.S.C. 1601, et seq.]

### 3. The Parties should be compelled to arbitrate their disputes.

Based on the foregoing, the Federal Arbitration Act applies and the parties should be compelled pursuant to the Act to arbitrate their dispute. Therefore, GLOBAL's motion to compel arbitration should be granted.

### B. ALL PROCEEDINGS IN THIS MATTER SHOULD BE STAYED PENDING THE OUTCOME OF ARBITRATION.

Section 3 of the Federal Arbitration Act provides as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, **shall** on application of one of the parties' stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

Consequently, if the court determines that the dispute between the parties is subject to the arbitration agreement, the Act **requires** the court to stay the action pending arbitration. [*See, Wagner v. Stratton Oakmont, Inc.* (9th Cir. 1996) 83 F. 3rd 1046, 1048.] Therefore, if the court determines that enforcement of the parties' arbitration provisions is appropriate, a stay of all proceedings in this matter is required.

### C. THE DISPUTE BETWEEN PLAINTIFF AND GLOBAL MUST BE COMPELLED TO ARBITRATION PURSUANT TO THE CALIFORNIA ARBITRATION ACT.

California Code of Civil Procedure § 1281.2 provides, in part, as follows:

> [T]he court shall order the petitioner and the respondent to arbitrate

RC1/5054869.1/DB
MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANT'S MOTION TO COMPEL                -8-                CASE NO. C 07 6026 MHP

the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that:

(a) The right to compel arbitration has been waived by the petitioner; or (b) Grounds exist for the revocation of the agreement.

As discussed above, the Agreement in effect between Plaintiff and GLOBAL during the relevant time frame alleged in the complaint provided that all disputes arising out of or related to the agreement shall be subject to arbitration. Plaintiff has evidenced a refusal to submit this dispute to arbitration by the filing of this action. Moreover, there are no grounds that exist for the revocation of the agreement. Therefore, even if California's Arbitration Act applied in this case – and it does not – arbitration must be compelled. Additionally, under California law, this action must be stayed pursuant to California Code of Civil Procedure section 1281.4, which provides that upon ordering a dispute to arbitration, the court "shall . . . stay the action or proceeding until arbitration is had. . . ."

## IV

## CONCLUSION

Based on the foregoing, GLOBAL respectfully requests that the court issue an order compelling the parties to submit their disputes to binding arbitration in accordance with the provision of ¶ 7 of the Agreement, and stay all proceedings in this action pending the outcome of the arbitration.

Dated: January 17, 2008

ROPERS, MAJESKI, KOHN & BENTLEY

By: _____
J. MARK THACKER
Attorneys for Defendant
GLOBAL EQUITY LENDING INC.

RC1/5054869.1/DB
MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANT'S MOTION TO COMPEL

- 9 -

CASE NO. C 07 6026 MHP