1  RICHARD M. WILLIAMS (SBN 68032)
   GREGORY M. GENTILE (SBN 142424)
2  J. MARK THACKER (SBN 157182)
   ROPERS, MAJESKI, KOHN & BENTLEY
3  80 North First Street
   San Jose, CA 95113
4  Telephone:  (408) 287-6262
   Facsimile:  (408) 918-4501
5
   Attorneys for Defendant
6  GLOBAL EQUITY LENDING INC.

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11 DOLORES A. ARREGUIN, for herself     CASE NO. C 07 6026 MHP
   and other members of the general public
12 similarly situated,                   DECLARATION OF SANDRA CROTEAU
                                         IN SUPPORT OF DEFENDANT GLOBAL
13              Plaintiff,               EQUITY LENDING, INC.'S MOTION TO
                                         COMPEL ARBITRATION
14     v.
                                         Date:       March 3, 2008
15 GLOBAL EQUITY LENDING, INC., a        Time:       2:00 p.m.
   Georgia Corporation; and DOES 1 through  Courtroom: 15, 18th Floor
16 10, Inclusive,                        Judge:      Hon. Marilyn Hall Patel

17              Defendant.               Complaint filed: November 29, 2007

18

19

20     I, SANDRA CROTEAU, hereby declare that the following is true and accurate. I have

21 personal knowledge of the facts set forth in this declaration, and if called to testify, I would

22 competently testify in the following manner.

                                         1.
23

24     I am the Vice President of Administration for Global Equity Lending, Inc.

25 ("GEL") and I have personal knowledge of the facts set forth in this Declaration, and the

26 same are true and correct.

27

28

**DECLARATION OF SANDRA CROTEAU**                                CASE NO. C 07 6026 MHP
RC1/5056185.1/DB

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

2.

GEL is a corporation formed and operating in the State of Georgia, and maintains its principal place of business in Johns Creek, Georgia.

3.

GEL does business as a mortgage broker and mortgage lender for residential and commercial loans.

4.

GEL has business relationships with other mortgage lenders and often acts as a broker for loans funded by lenders other than GEL. These lenders maintain home offices in states other than Georgia, including, *inter alia*, California and Rhode Island.

5.

GEL maintains business operations in all fifty states, except New York, and is current with the licensing requirements of each state in which it does business.

6.

GEL is approved by the Federal Housing Authority ("FHA") and by the Veterans Administration ("VA") to act as a broker or lender for FHA and VA loans.

7.

GEL administers its national operations from its home offices in Johns Creek, Georgia.

8.

GEL processes the majority of loan applications from its home offices in Johns

Creek, Georgia. Loan applications that are not processed at its home offices are processed by loan processing centers employed by GEL and located in several states including California, Massachusettes, Florida, Washington, New Jersey, North Carolina and Oregon.

9.

GEL has been a licensed residential lender in California since August 16, 2002.

10.

Delores Arreguin associated with GEL on April 2, 2002 when she executed a mortgage loan originator agreement with GEL in advance of GEL acquiring a California residential lending license.

11.

GEL operates an electronic World Wide Web site and computer data base that allow persons nationwide, who are associated with GEL or who want to associate with GEL to, over the internet, communicate with the company and to execute certain documents governing an associated person's relationship with the company.

12.

GEL was operating this electronic system when Delores Arreguin associated with GEL on April 2, 2002.

13.

On April 2, 2002, an executed form titled Global Equity Lending, Inc. Mortgage Loan Originator Employment Agreement (the "Agreement") was entered into GEL's database under the name of Delores Arreguin.

14.

The Agreement was created and stored electronically during the regular course and scope of GEL's business activities.

15.

Attached to this affidavit as Exhibit A is a true and correct copy of the Agreement stored electronically by GEL under the name of Delores Arreguin and executed on April 2, 2002.

16.

Upon receipt of the executed Agreement, Delores Arreguin received a user identification number and she was required to create a password for use in conjunction with the user identification number in all subsequent electronic communications with GEL.

17.

Delores Arreguin operated under and in accordance with the terms of the Agreement from April 2, 2002 until the date her association with GEL was terminated on May 31, 2007, and during that time she communicated electronically with GEL using the user identification number she received and the password she created at the time she executed the Agreement.

18.

Delores Arreguin also used her user identification and password to enter GEL's computer system and upload mortgage loan applications and direct loan applications to loan processing centers employed by GEL.

19.

The Agreement contained an arbitration clause that required, *inter alia,* that all compensation disputes be resolved through arbitration.

20.

The Agreement also contained a forum selection clause which acknowledged Arreguin's consent to resolve all disputes arising from or related to the Agreement at a location in Norcross, Georgia, which is a community located within the metropolitan Atlanta, Georgia area.

21.

The Agreement executed on April 2, 2002, including the arbitration and forum selection clauses, governed the relationship between GEL and Arreguin until the termination of her association with GEL.

22.

During the term of her association with GEL, Delores Arreguin originated mortgage loan applications for clients in California, Alabama and Texas.

23.

Attached as Exhibit B to this affidavit is a spreadsheet showing the loan applications originated by Delores Arreguin. The spreadsheet was created for this affidavit from data gathered and stored in the normal course of business. The spreadsheet truly and correctly shows the loan applications originated by Delores Arreguin during the term of her association with GEL.

24.

Between April 2, 2002 and the date of Arreguin's employment with GEL was terminated, portions of the Agreement were revised; however, no revisions were made to the arbitration and forum selection clauses in the Agreement and those clauses remained in force and effect through the term of Arreguin's association with GEL.

25.

Every year GEL mortgage loan originators are required to undergo a compliance review. As part of the review, loan originators are required to acknowledge and accept electronically any revisions made to the Agreement and applicable to the upcoming year.

26.

GEL's records show Dolores Arreguin acknowledged and accepted all revisions made to the Agreement subsequent to the original April 2, 2002 execution.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true to the best of my information and belief and that this declaration is executed on January 16, 2008, at Johns Creek, Georgia.

*Sandra Croteau*
SANDRA CROTEAU
Vice President of Administration
Global Equity Lending, Inc.

# Global Equity Lending, Inc.
## Mortgage Loan Originator Employment Agreement

This Mortgage Loan Originator Employment Agreement ("Agreement"), made and entered into effective as of the date of execution by the parties hereto, is by and between Global Equity Lending, Inc., a Georgia corporation (hereinafter "GEL"), and the undersigned individual (hereinafter "Loan Originator");

## RECITALS

WHEREAS, GEL is engaged in the activity of originating loans evidenced by notes ("Notes") and secured by mortgages ("Mortgages") on real property (hereinafter the Mortgages and Notes are collectively referred to as "Loans") for mortgage lenders and is desirous of employing Loan Originator to obtain and prepare loan applications and other materials from prospective borrowers ("Applicants");

WHEREAS, Loan Originator is desirous of becoming employed by GEL to assist GEL in obtaining and preparing loan applications and other materials from Applicants;

NOW, THEREFORE, in consideration of mutual promises of and benefits to be derived by the parties GEL, and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, GEL hereby agrees to employ Loan Originator, and Loan Originator hereby agrees to be employed by GEL, subject to the following terms and conditions:

1. Loan Originator's Duties, Responsibilities, Limitations on Authority.

    1.1   Generally. Loan Originator shall use his or her best efforts to originate real estate loans on GEL's behalf by contacting the public and members of the real estate profession. All originations shall be done in a prudent manner and shall conform to the standards required by GEL as well as all state, federal and local regulations and statutes. In particular, Loan Originator covenants that he or she shall comply with the Federal Equal Credit Opportunity Act and its Regulation B, the Fair Housing Act, the Home Mortgage Disclosure Act and its Regulation C, the Federal Truth-in-Lending Act and Regulation Z, and the Real Estate Settlement Procedures Act and its Regulation X. Loan Originator understands and agrees that Loan Originator has an obligation to all Applicants to ensure that Applicants are fully advised of the various loan options available to them prior to obtaining and submitting an application to GEL. Loan Originator shall counsel each Applicant by analyzing the Applicant's income and debt and pre-qualifying the Applicant to determine what the Applicant can afford; consulting with the Applicant about home financing, including advising Applicant about different loan products, closing costs, and monthly payments; assisting in collecting from Applicant financial information (including tax returns and bank statements) necessary for the application process; maintaining regular contact with Applicant, GEL and others between the time the application is submitted to GEL and the loan closing in order to apprise Applicant of the status of the application and to gather any additional information as needed. As to all applications which are accepted for processing, Loan Originator voluntarily agrees to complete the application (including taking information from Applicants and assisting Applicants in filling out the application), submit the application to GEL, and assist in attaining such supplementary information as may be requested of Loan Originator by the processing agent in the event the Applicant does not respond to the processing agent's information requests in a timely manner. Loan Originator will only utilize the E-MAPsm and E-1003sm loan origination tools and pipeline reporting tools (Collectively the Mortgage Closing System) to submit applications, track activities relating to applications, and communicate the status of the applications.

    1.2   Compliance With GEL Rules and Guidelines. The Loan Originator agrees to comply with all rules and guidelines set forth in the Mortgage Loan Originator Agreement Rules and Guidelines ("Rules and Guidelines") and other written policies, instructions and procedures, either now existing or as issued from time to time by GEL, which by this reference are made part of this Agreement. The Rules and Guidelines are those rules and guidelines published in writing from time to time by GEL to its Loan Officers containing certain additional requirements imposed on GEL Loan Officers as part of their contractual relationship with GEL and other matters affecting GEL Loan Officers. GEL also publishes policies and procedures of GEL and the operational rules and regulations required by the various regulatory agencies.



EXHIBIT     "A"

1.3 **Business Cards, Advertising.** Loan Originator shall have the authority to represent through business cards, announcements, or other documents, that Loan Originator is an employee of GEL performing mortgage loan origination services. GEL will provide such advertising and promotional materials as it deems appropriate. Loan Originator shall not engage in any additional advertising or use any marketing materials that are not approved in advance and shall submit such advertising or marketing materials to GEL for approval before circulating them to the public. Due to Branch Office registration requirements in several states, only cell phone numbers, ESA numbers, etc. may be used on any personalized advertising you may request.

1.4 **Other Contractual Affiliations.** Subject to the provisions of this Paragraph 1.4, Loan Originator may engage in other business activities to the extent such other activities do not interfere or conflict with Loan Originator's employment duties hereunder. Notwithstanding the foregoing, during the term of this Agreement, Neither Loan Originator nor any of Loan Originator's immediate family shall not, except with respect to Exempt Business Activities (as defined in Section 6.4 hereof), if any: i) be associated with, be a representative of, or enter into a contractual agreement of any kind with any other mortgage brokerage or mortgage banking firm; ii) maintain any mortgage broker license; or iii) originate any real estate loans except on behalf of GEL unless specifically approved in writing by GEL. Loan Originator or any of Loan Originator's Immediate family members agrees to immediately notify GEL in writing if Loan Originator acquires or obtains any interest in or affiliation with any other mortgage brokerage or mortgage banking firm, or engages in any employment relating to the origination of real estate loans, either directly or indirectly, whether alone or with any person or entity other than GEL. Loan Originator shall immediately notify GEL if Loan Originator becomes involved in any activity that would create the possibility of a conflict of interest on the part of Loan Originator with respect to GEL or any services offered by or on behalf of GEL.

1.5 **No Other Authority.** Except as set forth in this Paragraph 1, Loan Originator shall not have any authority, and shall under no circumstances hold himself or herself out to any person as having any authority, to represent or obligate GEL in any manner. Loan Originator shall not contact Investors, Lenders, Mortgage Insurers, State regulators, or Federal regulators in the conduct of their GEL activities.

2. **Compensation.** For all services to be rendered hereunder, Loan Originator shall be paid on a commission basis only, in the amounts and at the times set forth on GEL's published commission schedules as amended from time to time. Loan Originator's compensation shall be paid in accordance with GEL's normal commission payroll practices in effect from time to time and shall be reported on Federal form W-2 as employee compensation, subject to FICA, FUTA, and income tax withholding as required by federal, state, and local laws. Loan Originator agrees that, where required by law, he or she shall disclose to customers all the fees that Loan Originator will be paid for services rendered in connection with this Agreement in a form approved by GEL and in accordance with state and federal regulations. GEL shall, in its sole and absolute discretion, have the right to change, modify, alter, or decrease any commissions payable pursuant to this Agreement; provided, however, that any changes, modifications, alterations, or decreases shall be effective only on a prospective basis. Except as set forth above, Loan Originator shall not be entitled to receive any other compensation or benefits from GEL of any kind or nature.

3. **Term and Termination.** This Agreement shall commence on the date of execution of this Agreement and shall continue until it is terminated in accordance with the provisions hereof. This written Agreement is terminable at will by either party upon advance written notice of seven (7) days. This Agreement shall also terminate by operation of law or upon the death or disability of Loan Originator. Upon termination of this Agreement, except as otherwise provided hereunder and except as to commissions earned by Loan Originator prior to the effective date of termination, which shall be paid by GEL to Loan Originator within a reasonable period of time, the parties shall have no further rights or obligations with respect to each other. GEL may terminate this Agreement immediately if Loan Originator breaches any of the requirements contained in sections 1.1, 1.2, 1.4, 5, 6.1, 6.2, 6.3, 6.4, or 13.

4. **Loan Applications, Programs.** GEL, in its sole discretion, may reject any application for reasons of its own business convenience, and nothing herein shall be construed to require the processing of any loan application presented by Loan Originator. GEL shall have the sole discretion of determining what loan programs it will offer and what Loans it will make. All Loans shall be closed in the name of GEL or such other names as GEL shall determine.

5. **Representations.** Loan Originator agrees that at all times during the term of this Agreement that Loan Originator shall devote such time and effort as are necessary to faithfully perform to the best of Loan Originator's ability Loan Originator's duties and responsibilities hereunder. Loan Originator specifically represents to GEL that by entering into this Agreement, Loan Originator does not and will not conflict with or violate any other agreement or understanding to which the Loan Originator is a party, or any law, regulation, or order, including but not limited to any disciplinary orders or requirements of any regulatory agency to which the Loan Originator is subject. Loan Originator agrees that Loan Originator is and will

continue to be in compliance with all applicable state and federal laws, rules and regulations governing the business contemplated by this Agreement. Loan Originator will comply with the state laws concerning mortgage originations in the states where Loan Originator solicits applications. Loan Originator acknowledges that GEL maintains links to law summaries and on its web site and affirmatively confirms Loan Originator's duty to know and understand these laws.

6. Covenants.

6.1   General. Loan Originator acknowledges and agrees that GEL is the owner of the rights to all Applicants placing Loans through GEL, and that these Applicants comprise a substantial part of the goodwill of GEL. To protect the business and goodwill of GEL and all confidential information belonging to GEL, the parties have agreed to a limited period of non-competition, non-solicitation, and to a nondisclosure of confidential information following termination of this Agreement. Such limitations relate solely to the business of GEL, and to GEL's Applicants, however, and are not intended to prevent Loan Originator from rendering mortgage origination services, if Loan Originator so desires.

6.2   Non-Competition. Upon termination of this Agreement, Loan Originator agrees that for a period of one (1) year following such termination Loan Originator will not, without the written consent of GEL, directly or indirectly solicit or accept loan applications from, or perform any of the services Loan Originator performed within the scope of this Agreement for, any Applicant or GEL employee (other than Loan Originator's Exempt Persons as hereinafter defined) with whom Loan Originator had personal contact or established a business relationship during the term of this Agreement. Exempt Persons shall consist of: (i) any persons, identified by name and city and state of residence, and with respect to whom Loan Originator provides written documentation as of the date of execution of this Agreement establishing that such persons are existing customers of Loan Originator, and (ii) any persons, identified by name and city and state of residence, and with respect to whom Loan Originator provides written documentation as of the date of execution of this Agreement establishing that such persons are contractually affiliated with Loan Originator, and who thereafter become Loan Originators of GEL within thirty (30) days from the date of this Agreement.

6.3   Confidential and Proprietary Information. Loan Originator acknowledges that, in the course of Loan Originator's employment with GEL pursuant to this Agreement, Loan Originator will become acquainted with confidential information belonging to GEL. This information relates to persons, firms, and corporations that are or may become customers, financing entities, or accounts of GEL during the term of this Agreement; this provision includes the names of all customers, lenders, rates, and requirements. Loan Originator will not, without the written consent of GEL, disclose or make any use of such confidential information. All Loans placed and all GEL records of Applicants or of any company business, whether prepared by Loan Originator during the term of this Agreement or otherwise coming into Loan Originator's possession and control, shall remain and be the exclusive property of GEL and be surrendered to GEL upon termination of this Agreement. Loan applications, files, forms and other documentation procured during the term of this Agreement are the property of GEL and shall not be removed from the present premises or control of GEL without its express written consent. Any such loan application, files, or documents, shall be surrendered to GEL immediately upon the termination of this Agreement.

6.4   Organizing Competitive Business/Soliciting GEL Loan Originators or Employees. Except for an Exempt Business Activity, Loan Originator agrees that during the term of this Agreement, Loan Originator will not directly or indirectly undertake the planning or organizing of any business activity competitive with the work Loan Originator performs as an employee pursuant to the terms of this Agreement. Loan Originator agrees that Loan Originator will not, for a period of two (2) years following termination of this Agreement, directly or indirectly, solicit any of GEL's independent contractors, loan officers or employees, with whom Loan Originator during the term of this Agreement had personal contact (but excluding any of Loan Originator's Exempt Persons) to work for Loan Originator or any other competitive company. "Exempt Business Activity" shall mean any business activity with respect to which Loan Originator provides written documentation as of the date of execution of this Agreement establishing that Loan Originator is already engaged in such business activity, and that, to the reasonable satisfaction of GEL, in such business activity Loan Originator does not originate the types of Loans offered by GEL.

6.5   Indemnification. Loan Originator shall indemnify GEL for and hold it harmless from and against any and all claims, losses, liabilities, damages, taxes, penalties, fines, forfeitures, reasonable legal fees and expenses, judgments, and other costs and expenses that GEL may sustain arising and/or resulting from any claim, demand, defense or assertion based on or grounded upon, or resulting from a breach of any representation, warranty, or covenant by Loan Originator under this Agreement. This indemnity shall survive the termination of this Agreement.

7. Arbitration of Grievances.

7.1   General. The Parties agree that, except as specifically provided to the contrary in this Agreement, any controversy, claim or dispute arising out of or relating to this Agreement ("Grievance"), between the Loan Originator, on the one part, and GEL and/or any of its officers and employees, or any of them, on the other part shall be resolved exclusively by arbitration in accordance with this Paragraph 7. For purposes of this Paragraph 7, the terms "Party" and "Parties" include GEL, the Loan Originator and other officers and employees of GEL. All Grievances, unresolved in the normal course of business, to the extent that any Party wishes to pursue the matter further, shall be resolved by arbitration in accordance with the Commercial Arbitration Rules ("Rules") of the American Arbitration Association then in effect, except that, or in addition to such Rules: i) in order to assure neutrality and impartiality of the arbitrator(s), and to preserve the confidentiality of proprietary information, the arbitrator(s) shall not be any present or past owner, officer, director, employee, consultant, contractor, agent, attorney or other representative of any mortgage company, mortgage broker, mortgage banker, or of any affiliate of any of them; ii) the locale where the arbitration shall be held is the principal business location of GEL in Norcross, Georgia; iii) a transcript shall be made on the proceeding; and iv) the arbitrator's(s') award shall state their findings of fact and conclusions of law. The award, including such findings and conclusions may be reviewed, vacated, modified or corrected upon application or petition of any Party brought within thirty (30) days after the date of the award, by a court of competent jurisdiction, provided that in addition to the grounds stated in the United States Arbitration Code, 9 U.S.C. § 1, and following, or in any other applicable law or statute, the court may also vacate, modify or correct the award if the conclusions of law are contrary to law, or if the findings of fact are not supported by the facts (as determined by whether there was any pertinent and material evidence to support the findings). Otherwise, or in compliance with the court's review, the decision of the arbitrator(s) shall be final and binding. Judgment upon the award rendered by the arbitrator(s), or judgment upon the award as reviewed by the court, may be entered in any court having jurisdiction thereof.

7.2   Waiver of Litigation. The Parties acknowledge and agree that they are engaged in, and that this Agreement evidences transactions involving, interstate commerce and that, except as specifically provided to the contrary in this Agreement, this Paragraph 7 is and shall be the Parties' exclusive remedy for any Grievance arising out of or relating to this Agreement, or the breach thereof. Except as specifically provided to the contrary in this Agreement, the Parties expressly waive the right to litigate in a judicial forum all Grievances and waive the right to trial by jury. The Parties further agree that the findings of fact issued by the arbitrator(s), as reviewed, if applicable, shall be binding on them in any subsequent arbitration, litigation or other proceeding.

7.3   No Condition Precedent to Action and Power of Arbitrators. Anything herein or elsewhere contained to the contrary notwithstanding, GEL shall not be required to negotiate, arbitrate or litigate as a condition precedent to taking any action under this Agreement. The Parties expressly authorize the Arbitrator(s) to fashion and award any type of remedy that could be awarded by a court, including such equitable or extraordinary remedies as temporary and permanent injunctive relief.

7.4   Extraordinary Relief. The Parties agree that GEL has the right to seek preliminary and temporary restraining orders, injunctions and other extraordinary relief (such orders, injunctions and other relief referred to as "Extraordinary Relief") under Paragraph 6 of this Agreement without complying with this Paragraph 7. Without limitation, the Parties agree that the requirements for good faith arbitration under this Paragraph 7 do not preclude GEL from seeking in an arbitral or in a judicial forum, or in both, Extraordinary Relief to protect its rights under Paragraph 6 of this Agreement. This Paragraph 7 shall not be deemed to preclude or narrow the judicial or arbitral powers regarding Extraordinary Relief.

8.   Assignment. This Agreement may be assigned by GEL in the event of a bona fide sale or transfer of ownership or control of the business to another person or entity; provided however, that the assignee shall assume all obligations of GEL herein, in which case GEL shall be released of any further liability to the Loan Originator hereunder. The personal character and skill of the Loan Originator are a material inducement to GEL to enter into this Agreement, and any attempt by Loan Originator to assign this Agreement or to assign any rights (including the right to receive commissions) which Loan Originator may have hereunder shall be null and void, and such attempt to assignment shall be considered a repudiation and termination of this Agreement by Loan Originator.

9.   Amendment. This is the entire Agreement of the parties and any amendment or modification thereof shall be in writing and signed by both parties. This Agreement is binding upon the parties, their heirs and assigns.

10.   Waiver. The waiver by GEL of any breach or default by Loan Originator shall not operate or be construed as waiver of any subsequent breach or default by Loan Originator.

11. <u>Governing Law.</u> The enforcement of this Agreement shall be governed by the laws of the State of Georgia and venue shall be in Cobb County or Gwinnett County Superior Court, State of Georgia.

12. <u>Severability.</u> The provisions of this Agreement are severable, and if one or more provisions thereof are found to be unenforceable in whole or in part, the remaining provisions and any partially enforceable provisions will nevertheless be binding and enforceable to the full extent of the law.

13. <u>Fiduciary Obligation / Consequences of Loan Fraud.</u> Loan Originator acknowledges that GEL, as a licensed mortgage lender/broker, may bear the responsibility to third parties for all actions of its employees. Loan Originator hereby acknowledges and agrees that Loan Originator is responsible for the content and quality of each application taken and each Loan submitted to GEL. Loan Originator understands that the submission of a loan application containing false information is a crime and that loan fraud includes, but is not limited to submission of inaccurate information, including false statements on loan application(s) and falsification of documents purporting to substantiate credit, employment, deposit and asset information, personal information including identity, ownership/non-ownership of real property; forgery of partially or predominantly accurate information; incorrect statements regarding current occupancy or intent to maintain minimum occupancy as stated in the security instrument; lack of due diligence by Loan Originator, including failure to obtain all information required by the application and failure to request further information as dictated by borrower's response to other questions; unquestioned acceptance of information or documentation which is known, should be known, or should be suspected to be inaccurate; simultaneous or consecutive processing of multiple owner occupied loans from one applicant supplying different information on each application; allowing an applicant or interested third-party to "assist" with the processing of the loan; Loan Originator's non-disclosure of relevant information. Loan Originator acknowledges that fraudulent loans cannot be sold into the secondary market and, if sold, will require repurchase by GEL and fraudulent loans damage GEL's contractual agreements with its investors and mortgage insurance providers. If Loan Originator participates in loan fraud of any kind, the following is a list of a few of the potential consequences that may result to Loan Originator: criminal prosecution; immediate termination of this Agreement; loss of lender access due to exchange of information between lenders, mortgage insurance companies, including submission of information to Investors (FHLMC/FNMA), police agencies, and the Department of Financial Institutions; civil action by GEL; civil action by applicant/borrower or other parties to the transaction.

14. <u>New Employee Training Certification fee.</u> As part of the application process, I acknowledge that I will pay a $125.00 training certification fee. This fee is payable by credit card (Visa, Master Card, American Express, or Discover) to Global Equity Lending, Inc. I acknowledge and understand that this fee is non-refundable. I acknowledge and understand that I am responsible for any additional state licensing/registration fees, if any. I acknowledge and understand that I am responsible for fees pertaining to pre-licensing training, education and continuing education.

15. <u>Previous Agreements.</u> This Agreement supersedes any and all previous agreements between the parties hereto.

IN WITNESS WHEREOF, the parties have executed this Agreement by affixing their signatures thereto.

**New Loan Originator's Acknowledgements**

You must check the following acknowledgments to continue:

    ☒  A.  My becoming an employee of Global Equity Lending will not violate the terms of or interfere with any contract, agreement or business relationship that I have or have had with any third party, including without limitation, World Financial Group, Inc..

    ☒  B.  Upon becoming an employee of Global Equity Lending, I will not engage in any business practice or behavior, nor will I take any action, which will result in any violation of any restrictions or covenants to which I am subject pursuant to any agreement to which I was previously a party, including, without limitation, any agreement with World Financial Group, Inc.

☒ C. Global Equity Lending, its officers, directors, shareholders and employees have not induced me in any way whatsoever to terminate any contract, agreement or business relationship that I presently have or have had with any third party, including without limitation, any agreement with World Financial Group, Inc.

☒ D. I understand that these acknowledgments constitute a part of my Global Equity Lending, Inc., Mortgage Loan Originator Employment Agreement to which I am bound and are material representations upon which Global Equity Lending shall rely in its acceptance of my Mortgage Loan Originator Employment Agreement.

**Printed Name: Dolores Arreguin**
Date: 4/2/2002 3:07:51 PM

By typing my full name and clicking "I Accept" below I signify my acceptance of the Global Equity Lending New Loan Originator's Acknowledgments.

| Loan # | Borrower | Co Borrower | Address1 | City | St | Zip | Loan Amt | Date OfApp | Phase Name | Phase Date | Agent | Agent Name | Field TrainerCode | Field TrainerName | LCID | LC Name |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1934 | REDACTED | | | | | | $220,875 | 1/8/03 | Cancelled | 8/3/04 | AF0099 | Dolores Arreguin | | | | |
| 2065 | | | | | | | $116,450 | 1/12/03 | Cancelled | 8/3/04 | AF0099 | Dolores Arreguin | | | | |
| 2067 | | | | | | | $217,350 | 1/12/03 | Funded | 8/3/04 | AF0099 | Dolores Arreguin | | | | |
| 2332 | | | | | | | $477,135 | 1/20/03 | Cancelled | 8/3/04 | AF0099 | Dolores Arreguin | | | | |
| 2366 | | | | | | | $244,000 | 1/21/03 | Denied | 8/3/04 | AF0099 | Dolores Arreguin | | | | |
| 4287 | | | | | | | $170,000 | 5/21/03 | Denied | 8/3/04 | AF0099 | Dolores Arreguin | | | | |
| 9008179 | | | | | | | $150,000 | 10/31/03 | Closed | 8/3/04 | AF0099 | Dolores Arreguin | | | | |
| 9008881 | | | | | | | $274,000 | 11/12/03 | Cancelled | 10/6/04 | AF0099 | Dolores Arreguin | | | | |
| 9010375 | | | | | | | $165,000 | 12/4/03 | Cancelled | 3/3/04 | AF0099 | Dolores Arreguin | | | | |
| 9011845 | | | | North Highlands | CA | 95660 | $188,000 | 12/29/03 | Closed | 2/11/04 | AF0099 | Dolores Arreguin | | | | |
| 9013967 | | | | Fresno | CA | 93710 | $200,000 | 1/14/04 | Closed | 4/5/04 | AF0099 | Dolores Arreguin | | | | |
| 9014076 | | | | Citrus Heights | CA | 95610 | $200,000 | 1/15/04 | Closed | 3/18/04 | AF0099 | Dolores Arreguin | | | | |
| 9014099 | | | | Carmichael | CA | 95608 | $250,000 | 1/15/04 | Closed | 3/17/04 | AF0099 | Dolores Arreguin | | | | |
| 9015797 | | | | Vallejo | CA | 94591 | $306,000 | 1/31/04 | Closed | 4/16/04 | AF0099 | Dolores Arreguin | | | | |
| 9016860 | | | | Sacramento | CA | 95841 | $106,074 | 2/10/04 | Closed | 5/10/04 | | | AF0099 | Dolores Arreguin | | |
| 9017232 | | | | Sacramento | CA | 95820 | $87,950 | 2/16/04 | Closed | 6/18/04 | | | AF0099 | Dolores Arreguin | | |
| 9019524 | | | | Sacramento | CA | 95824 | $125,000 | 3/9/04 | Closed | 6/16/04 | | | AF0099 | Dolores Arreguin | | |

EXHIBIT "B"

REDACTED

| | | | | | | |
|---|---|---|---|---|---|---|
| 9022441 | Antelope | CA | 95843 | $293,550 | 4/3/04 | Closed | | AF0099 | Dolores Arreguin |
| 9023940 | Sacramento | CA | 95835 | $238,876 | 4/14/04 | Closed | | AF0099 | Dolores Arreguin |
| 9022476 | Knights Landing | CA | 95645 | $161,930 | 4/14/04 | Closed | 7/16/04 | AF0099 | Dolores Arreguin |
| 9023702 | Fresno | CA | 93720 | $267,425 | 4/23/04 | Cancelled | 12/13/04 | AF0099 | Dolores Arreguin |
| 9022477 | Dixon | CA | 95620 | $319,140 | 5/17/04 | Cancelled | 7/12/04 | AF0099 | Dolores Arreguin |
| 9030154 | Auburn | CA | 95602 | $383,143 | 6/8/04 | Closed | 8/31/04 | AF0099 | Dolores Arreguin |
| 9029249 | Ontario | CA | 91762 | $153,000 | 6/15/04 | Cancelled | 7/10/04 | | Dolores Arreguin |
| 9032314 | Modesto | CA | 95358 | $149,139 | 7/11/04 | Cancelled | 10/6/04 | AF0099 | Dolores Arreguin |
| 9027680 | Winter Garden | FL | 34787 | $180,000 | 7/12/04 | Cancelled | 4/26/05 | | Dolores Arreguin |
| 9034601 | Paso Robles | CA | 93446 | $260,571 | 7/20/04 | Cancelled | 10/6/04 | AF0099 | Dolores Arreguin |
| 9035219 | Fairview Park | OH | 44126 | $100,000 | 7/25/04 | Cancelled | 1/21/05 | AF0099 | Dolores Arreguin |
| 9036765 | El Paso | TX | 79936 | $63,142 | 8/10/04 | Denied | 9/23/04 | | Dolores Arreguin |
| 9038759 | Mobile | AL | 6604 | $67,410 | 8/22/04 | Denied | 8/22/04 | AF0099 | Dolores Arreguin |
| 9039440 | Sacramento | CA | 95828 | $220,201 | 8/27/04 | Closed | 10/15/04 | AF0099 | Dolores Arreguin |
| 9039783 | Vacaville | CA | 95687 | $292,500 | 9/2/04 | Cancelled | 10/2/04 | AF0099 | Dolores Arreguin |

REDACTED

REDACTED

| Loan # | City | State | Zip | Amount | Date | Status | Code | Officer |
|---|---|---|---|---|---|---|---|---|
| 9040675 | Sacramento | CA | 95838 | $182,360 | 9/11/04 | Cancelled 10/29/04 | AF0099 | Dolores Arreguin |
| 9042938 | Sacramento | CA | 95817 | $178,050 | 9/22/04 | Cancelled 10/29/04 | AF0099 | Dolores Arreguin |
| 9040475 | Motoaca | VA | 23803 | $97,494 | 9/25/04 | Cancelled 11/19/04 | | Dolores Arreguin |
| 9047975 | Sacramento | CA | 95824 | $235,500 | 10/18/04 | Closed | AF0099 | |
| 9046517 | Lakehead | CA | 96051 | $144,000 | 10/28/04 | Cancelled 11/5/04 | AF0099 | Dolores Arreguin |
| 9046187 | Sacramento | CA | 95820 | $243,050 | 11/1/04 | Closed 12/8/04 | AF0099 | Dolores Arreguin |
| 9048885 | Rio Linda | CA | 95673 | $295,800 | 11/14/04 | Closed 2/14/05 | AF0099 | Dolores Arreguin |
| 9051966 | Sacramento | CA | 95822 | $174,500 | 11/15/04 | Closed 1/5/05 | AF0099 | Dolores Arreguin |
| 9050294 | Loomis | CA | 95650 | $373,550 | 11/29/04 | Cancelled 1/6/05 | AF0099 | |
| 9052134 | Walnut Grove | CA | 95690 | $449,600 | 11/30/04 | Cancelled 12/7/04 | | AF0099 Dolores Arreguin |
| 9052439 | Antelope | CA | 95843 | $304,500 | 12/3/04 | Cancelled 12/29/04 | AF0099 | Dolores Arreguin |
| 9052923 | Friant | CA | 93626 | $174,650 | 12/6/04 | Cancelled 12/14/04 | AF0099 | |
| 9052993 | Auburn | CA | 95603 | $115,000 | 12/10/04 | Cancelled 8/6/05 | | AF0099 Dolores Arreguin |
| 9054344 | Rocklin | CA | 95765 | $216,800 | 12/16/04 | Closed 2/10/05 | | AF0099 Dolores Arreguin |
| 9054485 | Sacramento | CA | 95825 | $340,200 | 12/22/04 | Cancelled 1/25/05 | | AF0099 Dolores Arreguin |

REDACTED

| Loan # | City | State | Zip | Amount | Date | Status | Status Date | Code | Name |
|---|---|---|---|---|---|---|---|---|---|
| 9054880 | Antelope | CA | 95643 | $252,500 | 12/23/04 | Cancelled | 2/18/05 | AF0099 | Dolores Arreguin |
| 9056148 | | | | | | | | | |
| 9056567 | Sacramento | CA | 95824 | $191,250 | 1/6/05 | Closed | 2/23/05 | AF0099 | Dolores Arreguin |
| 9056125 | Fort Worth | TX | 76123 | $135,000 | 1/10/05 | Cancelled | 1/26/05 | | |
| 9058239 | Citrus Heights | CA | 95610 | $255,200 | 1/17/05 | Cancelled | 1/25/05 | | |
| 9059888 | Sacramento | CA | 95834 | $412,000 | 1/21/05 | Closed | 3/28/05 | | |
| 9065359 | San Mateo | CA | 94403 | $525,000 | 1/31/05 | Closed | 4/29/05 | | |
| 9065066 | Orangevale | CA | 95662 | $157,250 | 3/4/05 | Cancelled | 4/18/05 | AF0099 | Dolores Arreguin |
| 9065292 | Roseville | CA | 94661 | $431,200 | 3/5/05 | Closed | 4/19/05 | | |
| 9070274 | | | | $103,000 | 3/30/05 | Funded | 4/22/05 | AF0099 | Dolores Arreguin |
| 9071461 | N. Las Vegas | NV | 89086 | $285,400 | 3/30/05 | Cancelled | 5/16/05 | | |
| 9073660 | Roseville | CA | 95747 | $416,000 | 4/8/05 | Closed | 6/10/05 | AF0099 | Dolores Arreguin |
| 9074251 | Orangevale | CA | 95662 | $195,500 | 4/12/05 | Cancelled | 5/3/05 | AF0099 | Dolores Arreguin |
| 9074253 | | | | $50,500 | 4/15/05 | Cancelled | 7/6/05 | AF0099 | Dolores Arreguin |
| 9074322 | Roseville | CA | 95678 | $38,250 | 4/15/05 | Funded | 6/1/05 | AF0099 | Dolores Arreguin |
| | | | | $100,639 | 4/18/05 | Closed | 7/6/05 | AF0099 | Dolores Arreguin |

REDACTED

| Loan # | City | State | Zip | Amount | Date | Status | Status Date | Code | Name |
|---|---|---|---|---|---|---|---|---|---|
| 9076232 | Sacramento | CA | 95841 | $304,000 | 5/11/05 | Closed | 6/28/05 | AF0099 | Dolores Arreguin |
| 9081568 | Sacramento | CA | 95670 | $325,000 | 5/21/05 | Cancelled | 7/11/05 | AF0099 | Dolores Arreguin |
| 9080200 | Rancho Cordova | CA | 95824 | $234,883 | 5/22/05 | Cancelled | 7/27/05 | AF0099 | Dolores Arreguin |
| 9095096 | Sacramento | CA | 95240 | $271,500 | 8/6/05 | Closed | 9/14/05 | AF0099 | Dolores Arreguin |
| 9096073 | Lodi | CA | 95661 | $380,000 | 8/8/05 | Cancelled | 9/30/05 | AF0099 | Dolores Arreguin |
| 9102486 | Roseville | CA | 95828 | $198,826 | 9/8/05 | Closed | 10/13/05 | AF0099 | Dolores Arreguin |
| 9104426 | Sacramento | CA | 91111 | $242,706 | 9/19/05 | Closed | 12/29/05 | AF0099 | Dolores Arreguin |
| 9105179 | Yuba | CA | 95848 | $273,597 | 9/27/05 | Cancelled | 11/14/05 | AF0099 | Dolores Arreguin |
| 9107345 | Sacramento | CA | 95820 | $228,162 | 10/6/05 | Cancelled | 11/14/05 | AF0099 | Dolores Arreguin |
| 9107108 | sacramento | CA | 12345 | $401,000 | 10/12/05 | Closed | 11/15/05 | AF0099 | Dolores Arreguin |
| 9110359 | Santa Rosa | CA | 95747 | $412,000 | 10/20/05 | Closed | 11/18/05 | AF0099 | Dolores Arreguin |
| 9111546 | Roseville | CA | 89503 | $233,929 | 10/27/05 | Cancelled | 1/10/06 | AF0099 | Dolores Arreguin |
| 9111681 | Reno | NV | 94002 | $370,422 | 10/28/05 | Closed | 12/16/05 | AF0114 | Dolores Arreguin |
| 9111702 | Belmont | CA | 95648 | $337,554 | 10/30/05 | Closed | 1/30/06 | AF0114 | Dolores Arreguin |
| | Lincoln | | | | | | | | |

REDACTED

REDACTED

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 9110692 | | Santa Rosa | CA | 95409 | $280,719 | 10/31/05 | Closed | 1/10/06 | AF0099 | Dolores Arreguin |
| 9111734 | | | | | | | | | | |
| 9113962 | | Lodi | CA | 95240 | $194,010 | 11/10/05 | Closed | 1/20/06 | | AF0099 | Dolores Arreguin |
| 9114114 | | Orangevale | CA | 95662 | $240,000 | 11/12/05 | Closed | 12/22/05 | AF0099 | Dolores Arreguin |
| 9115526 | | Santa Rosa | CA | 95401 | $305,149 | 11/16/05 | Cancelled 11/28/05 | | AF0099 | Dolores Arreguin |
| 9115616 | | Orangevale | CA | 95662 | $77,500 | 12/7/05 | Closed | 12/22/05 | AF0099 | Dolores Arreguin |
| 20546152 | | Santa Rosa | CA | 95401 | $293,000 | 12/12/05 | Closed | 4/27/06 | | AF0099 | Dolores Arreguin |
| 9116877 | | TBD | CA | 0 | $440,000 | 1/16/06 | Closed | 3/8/06 | | AF0099 | Dolores Arreguin |
| 20569492 | | | | | $33,200 | 1/24/06 | Approved 2/27/06 | | AF0099 | Dolores Arreguin |
| 20576422 | | Concord | CA | 94520 | $304,900 | 2/9/06 | Borrower 3/6/06 | | AF0099 | Dolores Arreguin |
| 20563993 | | Sacramento | CA | 0 | $200,000 | 2/20/06 | Closed | 3/22/06 | | AF0099 | Dolores Arreguin |
| 20657426 | | Santa Rosa | CA | 95403 | $482,400 | 4/6/06 | Cancelled 5/1/06 | | | Dolores Arreguin |
| | | Sacramento | CA | 95828 | $287,100 | 5/30/06 | Closed | 7/21/06 | AF0099 | Dolores Arreguin |

REDACTED