RICHARD M. WILLIAMS (SBN 68032)
GREGORY M. GENTILE (SBN 142424)
J. MARK THACKER (SBN 157182)
ROPERS, MAJESKI, KOHN & BENTLEY
80 North First Street
San Jose, CA 95113
Telephone: (408) 287-6262
Facsimile: (408) 918-4501

Attorneys for Defendant
GLOBAL EQUITY LENDING INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOLORES A. ARREGUIN, for herself and other members of the general public similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GLOBAL EQUITY LENDING, INC., a Georgia Corporation; and DOES 1 through 10, Inclusive,<br><br>Defendant. | CASE NO. C 07 6026 MHP<br><br>**DEFENDANT GLOBAL EQUITY LENDING, INC.'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL ARBITRATION**<br><br>**Date:** March 17, 2008<br>**Time:** 2:00 p.m.<br>**Courtroom:** 15, 18th Floor<br>**Judge:** Hon. Marilyn Hall Patel<br><br>**Complaint filed:** November 29, 2007 |

I

## INTRODUCTION

Plaintiff has failed to submit evidence sufficient to establish that she did not execute the Agreement containing the arbitration provision at issue. Moreover, she has failed to meet her burden of establishing that the arbitration provisions are procedurally and substantively unconscionable. Consequently, defendant GLOBAL EQUITY LENDING, INC.'s (hereinafter referred to as "GLOBAL") Motion to Compel Arbitration should be granted.

//

//

RC1/5078806.1/DB
REPLY TO OPPOSITION TO MOTION TO COMPEL ARBITRATION

CASE NO. C 07 6026 MHP

II

**PLAINTIFF EXECUTED THE AGREEMENT'**

As set forth in Ms. Croteau's Supplemental Declaration, Plaintiff electronically executed the Agreement attached as Exhibit "A" to Ms. Croteau's Supplemental Declaration. Moreover, from the commencement of Planitiff's employment until the end of it, an agreement was in effect with a forum-selection provision and an arbitration provision **identical** to those provisions set forth in both Exhibit "A" to Ms. Croteau's Declaration and her Supplemental Declaration. [Sandra Croteau initial Declaration, ¶ 24: Sandra Croteau Supplemental Declaration, ¶ 8.] The terms of these provisions never changed.

Interestingly, Plaintiff does not deny she signed any contract with her employer, nor does she deny that an arbitration provision or forum-selection provision were in effect during her employment. In fact, Plaintiff admits that an arbitration agreement was in effect during the course of her employment. [Complaint, ¶ 33.] She merely claims that she did not execute the Agreement on **April 2, 2002**, because she was not working for GLOBAL at that time. [Declaration of Plaintiff, ¶ 3.] As Ms. Croteau explains in her Supplemental Declaration, the Agreement was electronically executed when Plaintiff first applied for employment on the GLOBAL/World Lending Group website. [Sandra Croteau Supplemental Declaration, ¶ 3.] The formal effective date of Plaintiff's employment was not until July 29, 2002, after GLOBAL/World Lending Group completed the background check and approved the application. [Sandra Croteau Supplemental Declaration, ¶ 4.] Clearly, Plaintiff executed a series of employment agreements with GLOBAL/World Lending Group, all of which contained an arbitration provision and a forum-selection clause identical to those set forth in Exhibit "A" to Ms. Croteau's initial Declaration and Supplemental Declaration.

III

**THE ARBITRATION PROVISIONS ARE NOT PROCEDURALLY UNCONSIONABLE, AND THEREFORE SHOULD BE ENFORCED**

Contrary to Plaintiff's suggestions, **both** procedural and substantive unconsionability are required for a court to deny enforcement of an arbitration provision. [*Armendariz v. Foundation*

1  *Health PsychCare Services, Inc.* (2000) 24 Cal.4th 83, 114.] Procedural unconsionability focuses

2  on the elements of **surprise** and **oppression**. [*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064,

3  1072.]

4        Plaintiff's counsel argues the Agreement is procedurally unconscionable because it

5  allegedly was presented on a "take-it-or-leave-it" basis. [Opposition: 6:8-19.] As an initial

6  matter, Plaintiff's counsel has presented no evidence to support this contention. Plaintiff's own

7  Declaration is remarkably silent on this point. Moreover, Plaintiff's reliance on Paragraph 25 of

8  Ms. Croteau's Declaration is misplaced. It is not disputed by GLOBAL that loan originators

9  such as Ms. Arreguin were required to acknowledge and accept electronically an employment

10 agreement on an annual basis. However, "oppression" does not result solely from "take-it-or-

11 leave-it" circumstances unless the party challenging the arbitration provision had no alternative

12 source. [*Dean Witter Reynolds, Inc. v. Superior Court* (1989) 211 Cal.App.3d 758, 771-772

13 (holding that "the 'oppression' factor of the procedural element of unconsionability may be

14 defeated if the complaining party has a meaningful choice of reasonably available alternative

15 sources of supply from which to obtain the desired goods and services free of the terms claimed

16 to be unconscionable.")] Plaintiff has presented no evidence to establish that she could not

17 obtain employment from other employers either without an arbitration provision or with a

18 provision different from the one at issue in this case. More specifically, Plaintiff has not

19 presented any evidence to suggest that she was limited with respect to her employment

20 opportunities or that she would otherwise have been unemployed but for her acceptance of the

21 Agreement as presented by GLOBAL.

22       Plaintiff's arguments with respect to the unconsionability of the "place and manner"

23 provisions are equally unsupported. The three cases cited by Plaintiff in support of her argument

24 are distinguishable and do not support a finding of unconsionability with respect to the

25 arbitration provisions at issue in this case.

26       In *Bolter v. Superior Court* (2001) 87 Cal.App.4th 900, the court clearly based its findings

27 of unconsionability on the fact that the defendant franchisor recently changed the provisions of

28 the franchise agreement to require arbitration in Utah, rather than California as the initial

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

franchise agreements provided. Plaintiffs were franchisees since the early 1980's. They filed their complaint in 1988 asserting that within the previous four years, the defendant franchisor breached the agreements and the covenant of good faith and fair dealing by modifying "the franchise agreements at every opportunity 'to liberalize the obligations of [the defendant]' and 'constrict the rights of the franchisees.'" [*Id.* at 902-903.] The *Bolter* plaintiffs further alleged that "'at the time [the defendant] commenced the wrongful conduct upon which this action is based, all [plaintiffs] had extant written agreements with [the defendant] providing that jurisdiction would be in, and the governing law would be of, the State of California' but 'some of the more recent agreements provide that the franchisee shall submit to the jurisdiction of the State of Utah in any litigation involving the contract . . . .'" [*Id.* at 903.] The *Bolter* court based this decision on these circumstances finding that "petitioners were told they must agree to the new franchise terms in order to *continue* running their franchises. Only a person contemplating whether to purchase a franchise for the first time would have been in a position to reject [the respondent's] 'take it or leave it' attitude." [*Id.* at 907.] The *Bolter* court further noted that "[w]hen petitioner first purchased their . . . franchises in the early 1980's, [the respondent] was headquartered in California, and the franchise agreement did not contain an arbitration provision. Thus, they never anticipated [the respondent] would relocate its headquarters to Utah and mandate that all disputes be litigated there." [*Id.* at 909.] The *Bolter* court further based its findings on the court that the arbitration provision prohibited class actions and were not entirely mutual since the respondent was entitled to pursue certain claims in court. [*Id.* at 909, fn. 2.] None of these elements are present in our case.[1] Moreover, the *Bolter* court's rationale is not applicable in our case since, ultimately, the court severed the unconscionable provisions pursuant to California Civil Code section 1670.5 and enforced the remainder of the arbitration provision. [*Id.* at 910.]

In *Comb v. PayPal, Inc.* (N.D. CA. 2002) 218 F.Supp.2nd 1165, the plaintiffs were consumers asserting claims against PayPal based on its handling of on-line payment funds and its

---

[1] Each agreement acknowledged and executed by Plaintiff during the course of her employment contained an arbitration provision identical to the initial agreement executed by Plaintiff.

failure to respond to customers' complaints. Although the court found the arbitration provision unconscionable in part, it based its decision on the fact that the user agreements at issue in that case prohibited consolidation of claims and the fact that the average transaction through PalPal was $55.00. The court specifically noted that no authority was cited "holding that it is reasonable for individual consumers from throughout the country to travel to one locale to arbitrate claims involving such **minimal sums**" [*Id.* at 1177. Emphasis added.] Unlike the agreement in *Comb*, the Agreement in our case does not prohibit consolidation of claims, nor are the magnitude of potential disputes under the agreement related in any degree to the "minimal sums" at issue in *Comb*.

Finally, *Armendariz v. Foundation Health PsychCare Services, Inc.* (2000) 24 Cal.4th 83, has absolutely no application in our case. In *Armendariz*, the court based its finding of unconsionability on the fact that the arbitration provision was effectively one-sided. The provision only required employees to arbitrate their wrongful term claims, but did not restrict the employer to arbitration for any claim it had against the employees arising from the employee's termination. [*Id.* at 120.] Moreover, the *Armendariz* court found that the "unconscionable one-sidedness of the arbitration agreement is compounded in this case by the fact that it does not permit the full recovery of damages for employees while placing no such restriction on the employer." [*Id.* at 121.] Obviously, these factors are not present in our case, and Plaintiff makes no such claim.

Plaintiff further claims, without support, that Norcross, Georgia is a "podunk town." In fact, Norcross is within the greater metropolitan area of Atlanta [Supplemental Declaration of Sandra Croteau, ¶ 11.] In essence, Norcross is no different from Danville, California, or San Carlos, California, with respect to San Francisco.

Absolutely no evidence has been presented by Plaintiff to support a conclusion that Norcross is **not** a neutral forum. Moreover, the arbitration provision at issue in this case specifically provides that the arbitration proceeding is to be governed by the rules of the American Arbitration Association, and further provides:

> In order to assure neutrality and impartiality of the arbitrator(s),

and to preserve the confidentiality of proprietary information, the arbitrator(s) shall not be any present or past owner, officer, director, employee, consultant, contractor, agent, attorney or other representative of any mortgage company, mortgage broker, mortgage banker, or any affiliate of any of them . . . .[Exhibit "A", S. Croteau initial Declaration and Supplemental Declaration, ¶ 7.1.]

## IV

### THE ARBITRATION PROVISION IS NOT SUBSTANTIVELY UNCONSIONABLE, AND THEREFORE SHOULD BE ENFORCED

Plaintiff fails to cite any legal authority to support her contention that the arbitration provision is unconscionable and should not be enforce merely because it requires the arbitration proceeding to be held in Norcross, Georgia. As with forum-selection clauses, the location of the arbitration should not affect the enforceability of the arbitration provisions absent compelling evidence that requiring the arbitration proceeding to take place in Georgia would be "so gravely difficult and inconvenient that [Plaintiff] will for all practical purposes be deprived of [her] day in court." [*Bremen v. Zapata-Offshore Company* (1972) 407 U.S. 1, 15.] As discussed in detail in GLOBAL's reply to Plaintiff's opposition with respect to GLOBAL's Motion to Dismiss, Plaintiff has failed to submit sufficient evidence to support her arguments. Plaintiff has identified two sources of income, but fails to state these are her only sources of income. [Declaration of Plaintiff, ¶ 4.] By referring to her bi-monthly unemployment payments, she implies that she is currently unemployed, but does not affirmatively state this. Moreover, she fails to explain why she is unemployed, and provides no facts to establish that she has made any reasonable effort to find employment or to establish that she cannot reasonably expect to be employed in the near future. Further, Plaintiff provides no information with respect to her current or future expenses which would off-set whatever income she actually receives. Consequently, Plaintiff's complaints that the location of the arbitration is unduly burdensome as to become unconscionable are unsupported and should be disregarded.

Plaintiff's claim that the arbitration provisions are not bilateral is based on a misleading interpretation of a provision of the Agreement. The provision cited by Plaintiff, Paragraph 7.3 of the Agreement, does not relieve GLOBAL of the obligation to arbitrate disputes arising under

the Agreement. To the contrary, the provision allows GLOBAL to take action "under this Agreement" without being required first to "negotiate, arbitrate or litigate." In other words, GLOBAL may, for example, terminate an employee or discipline the employee without first submitting the matter to arbitration. Paragraph 7.3 provides necessary clarification that GLOBAL can take internal administrative action since the scope of the arbitration provision is so broad.

Since the arbitration provision applies to "any controversy, claim or dispute arising out of or relating to this Agreement," a disagreement between an employee and GLOBAL which in GLOBAL's judgment should result in either disciplinary action or termination could, without clarification provided by Paragraph 7.3, result in an obligation on GLOBAL's part to first arbitrate the dispute before taking any such administrative action against the employee.

Accordingly, the arbitration provision is not unilateral as argued by Plaintiff's counsel. Therefore, there is no basis for a finding of substantive unconsionability.

## V

## THE ARBITRATION AGREEMENT DOES NOT VIOLATE PUBLIC POLICY

Initially, it must be recognized that Plaintiff's public policy argument is not directed to the arbitration provision, but rather constitutes a challenge to the Agreement generally, and the choice of law provision specifically. Therefore, any determination of whether the choice of law provision is enforceable or is a violation of public policy, as well as any other challenge to any other provision of the Agreement, must be left to the arbitrator, not this Court. [See, e.g., *Buckeye Check Cashing, Inc. v. Cardegna* (546 US 440, 449; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.* (1967) 388 US 395, 403-404.]

To the extent this Court nevertheless considers Plaintiff's public policy arguments, they lack merit. Plaintiff relies on *Nagrampa v. Mailcoups, Inc.* (9th Cir. 2006) 469 F.3rd 1257, to support her argument based on public policy. However, this decision is not applicable in our case. In *Nagrampa*, the plaintiff made claims based on the violation of California's Franchise Investment Law (Cal. Corp. Code § 31000. et seq.) and Consumer's Legal Remedies Act (Cal.

Civ. Code § 1750 et seq.)  **Both** of these statutory schemes expressly provide that the protections afforded under each act are not waivable. [Cal. Corp. Code § 31512; Cal. Civ. Code § 1751.]

In our case, Plaintiff has not identified any statutory provision of either the Labor Code or California's Unfair Business Practices Act (Cal. Bus. & Prac. Code § 17200 et seq.) which declares their provisions non-waivable.  Moreover, the *Nagrampa* court did not hold that claims under the UCL are not waivable, or that arbitration provisions are not enforceable to the extent such provisions conflict with a claim under the UCL.  Instead, the *Nagrampa* court merely held the arbitration provision unconscionable on other grounds.  As for the public policy issue, the *Nagrampa* court said: "Because the district court did not reach the public policy issue, however, **we decline to reach it now**." [*Nagrampa v. Malcoups, Inc.*, supra, 469 F.3rd at 1293.  Emphasis added.]

The *Nagrampa* court cited *Independent Association of Mailbox Center Owners, Inc. v. Superior Court* (2005) 133 Cal.App.4th 396, in its references to non-waivable statutory rights. [*Nagrampa v. Mailcoups, Inc.*, supra, 469 F.3rd at 1292-1293.] However, *Independent Association of Mailbox Center Owners, Inc.* does not support adoption of Plaintiff's arguments in this case.  Initially, it must be recognized that the issue arose in that case in the context of the petitioner's "unsuccessful request . . . to achieve a ruling on fee shifting, to vindicate their unwaivable statutory claims," and not in ruling on the enforceability of the underlying arbitration provision. [*Independent Association of Mailbox Center Owners, Inc.*, supra, 133 Cal.App.4th at 405.]  Further, that court did not hold that California's UCL law is necessarily non-waivable. The court merely noted that the petitioners were asserting statutory claims under California's Franchise Investment Law, the Cartwright Act (Cal. B&P Code § 16700 et seq.) the Uniform Trade Secrets Act (Cal. Civ. Code § 3426, et seq.) and the Unfair Competition Law (Cal B&P Code § 17200 et seq.), and that these claims "affect the public interest and appear to fall **all or part** within the rules of *Armendariz* [24 Cal.4th 83], and *Boghos* [36 Cal.4th 495]." [*Independent Association of Mailbox Center Owners, Inc.*, supra, 133 Cal.App.4th at 416.]  Having recognized only that some or all of the statutory claims may be non-waivable, the *Independent Association of Mailbox Center Owners, Inc.* court held that any decision on the issue, "cannot be made as a

matter of law on this record at this point," and remanded the matter for further proceedings on the **fee shifting and allocation issues**. [*Id.* At 417-418.]

Accordingly, the arbitration provision at issue in our case does not violate public policy and should, therefore, be enforced.

## VI

### ANY PART OF THE ARBITRATION CLAUSE FOUND TO BE UNENFORCEABLE SHOULD BE SEVERED AND THE REMAINDER ENFORCED

California Civil Code section 1670.5(a) provides:

> If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made, the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of the unconscionable clause as to avoid any unconscionable result.

To the extent this Court determines that any provision of the arbitration clause is unconscionable or unenforceable, that portion should be stricken and the remainder of the arbitration clause enforced. [*See, e.g., Armendariz v. Foundation Health PsychCare Services, Inc.* (2000) 24 Cal.4th 83, 121-122; *Bolter v. Superior Court* (2001) 87 Cal.App.4th 900, 910-911.]

## VII

### CONCLUSION

Based on the foregoing, GLOBAL respectfully requests the Court grant its motion to compel arbitration. Alternatively, in the event this Court finds any portion of the arbitration provision unconscionable or unenforceable, GLOBAL respectfully requests that the unenforceable provision be stricken and the remainder of the arbitration provision be enforced.

Dated: March 3, 2008

ROPERS, MAJESKI, KOHN & BENTLEY

By: _____
J. MARK THACKER
Attorneys for Defendant
GLOBAL EQUITY LENDING, INC.

RC1/5078806.1/DB
REPLY TO OPPOSITION TO MOTION TO COMPEL ARBITRATION

- 9 -

CASE NO. C 07 6026 MHP