RICHARD M. WILLIAMS (SBN 68032)
GREGORY M. GENTILE (SBN 142424)
J. MARK THACKER (SBN 157182)
ROPERS, MAJESKI, KOHN & BENTLEY
80 North First Street
San Jose, CA 95113
Telephone: (408) 287-6262
Facsimile: (408) 918-4501

Attorneys for Defendant
GLOBAL EQUITY LENDING, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOLORES A. ARREGUIN, for herself and other members of the general public similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GLOBAL EQUITY LENDING, INC., a Georgia Corporation; and DOES 1 through 10, Inclusive,<br><br>Defendant. | CASE NO. C 07 6026 MHP<br><br>**GLOBAL EQUITY LENDING INC.'S SUPPLEMENTAL BRIEF AND DECLARATION OF COUNSEL IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND MOTION TO CHANGE VENUE**<br><br>Date: June 23, 2008<br>Time: 2:00 p.m.<br>Dept.: 15<br>Judge: Hon. Marilyn H. Patel |

Pursuant to the Court's Order, set forth in the March 17, 2008 Transcript of Proceedings (Gentile Declaration, Exhibit "A"), GLOBAL EQUITY LENDING, INC. ("GLOBAL") hereby submits to the Court its Supplemental Brief and Declaration of Counsel in Support of its Motion to Compel Arbitration and Motion to Dismiss for Improper Venue.

## I. RELEVANT BACKGROUND

On March 17, 2008, the Court heard GLOBAL's Motion to Compel Arbitration and Motion to Change Venue. The Court ordered that limited depositions take place in order to satisfy the court's query as to whether Plaintiff executed and consented to an Employment Agreement containing a binding arbitration clause and a venue clause. (Gentile Declaration, Exhibit A, p. 5-6).

Global's Supple. Brief & Dec. of Counsel in Support of
Motion to Compel Arbitration & Motion To Change Venue
RC1/5127684.1/BL1

- 1 -

CASE NO. C 07 6026 MHP

Plaintiff's deposition was taken on May 12, 2008.[1] Attached to this Supplemental Brief, as Exhibit B and to the Declaration of Counsel are the relevant excerpts from the deposition transcript of Plaintiff reflecting her "recollection" of the events that are at issue. Plaintiff's deposition supports GLOBAL's motions for the following reasons.

## II. PLAINTIFF FAILED TO OFFER CREDIBLE EVIDENCE THAT SHE DID NOT EXECUTE THE GLOBAL EQUITY LENDING INC. MORTGAGE LOAN ORIGINATOR EMPLOYMENT AGREEMENT.

As set forth in the attached deposition excerpts of Plaintiff, Plaintiff was shown what was marked as Exhibit 1, the Global Equity Lending Inc. Mortgage Loan Originator Employment Agreement. She denied electronically executing the GLOBAL Agreement. (However, her testimony is belied by the attached deposition transcripts of Sandra Croteau and Eric Pennington, as set forth below). It bears emphasis in this supplemental brief that the basis for Plaintiff's denial **was not** because she had a firm recollection of not executing the Agreement, but because, in her opinion, "GLOBAL was not 'an entity in the State of California,' and 'we weren't signing documents for company that wasn't already an entity.'" (Gentile Declaration, Exhibit "B", page 26:13-25 - page 27: 1-9).

As testified by Plaintiff:

> Q: So looking at Exhibit 1, it's your testimony that you never saw this document in or around April 2002?
>
> A: Correct.
>
> Q: Did you ever go into a Web site, in or around April 2002, and see any document similar to what we've marked as Exhibit 1?
>
> A: The answer would be no.
>
> Q: Okay. If you look at the last – second-to-last page of Exhibit 1, which is GEL005, do you see that – do you see that there are a couple of boxes that have been marked with an X?
>
> A: I do.
>
> Q: Okay. And it's your testimony that you never marked those boxes at all?
>
> A: I've never seen this contract – or I don't recall seeing this contract at all.

---

[1] The following day, GLOBAL produced for deposition its employee Sandra Croteau, and a designated PMK, Eric Pennington.

1  Q: Okay. Now, there's a difference between saying "I've never seen this contract" as opposed to you don't recall seeing this contract.

A: Well, I would say I've never seen this document, because Global Equity Lending was not alive and well in that year. The name was not out there.

Q: So it's your position, then, because that company was not alive and well in April 2002, this document wouldn't have existed in April 2002.

A: Exactly.

Q: Okay, So if Global Equity Lending was in existence in or around April 2002, this document could have existed; is that right?

A: It – I've never seen it.

(Gentile Declaration, Exhibit "B", page 29: 1-29 – page 30: 1-6).

And as further testified:

Q: So I think I understand what your testimony is. Because Global Equity Lending, Inc., was not in existence in April 2002, then you could not have gone into a Web site and looked at any information with respect to Global Equity Lending?

A: Yeah. State of California didn't approve them until August 2002.

Q: And from what I understand, your testimony is Exhibit 1 – you never saw Exhibit 1 on April 2, 2002?

A: No, no.

Q: And you never went into a website for Global Equity Lending, Inc., in April 2002, and looked at a document that was similar to Exhibit 1?

A: No, no.

Q: And you never typed in your name on this document that we marked as Exhibit 1, correct?

A: Correct.

Q: I don't mean to be argumentative, but do you have any idea as to how your name appeared on the final page of this document, Exhibit 1?

A: Does this look like the same page of World Leadership Group? Is this identical to that page?

Q: I don't know. We're going to get into that in a minute.

> A: Okay. I would compare the two. This is not something I ever remember seeing, Global Equity Lending.
>
> Q: So you have no recollection?
>
> A: No. (Gentile Declaration, Exhibit "B", page 36: 4-25- 37:1-6). (Emphasis added).

Plaintiff's sworn testimony was not based on firm recollection of **not** seeing the GLOBAL Agreement or a firm recollection of **not** electronically executing the GLOBAL Agreement on April 2, 2002. Her testimony was based on her present opinion that because GLOBAL was not a "formal entity in California," she would not have been presented with the Agreement on a company web-site and therefore could not have electronically executed it. In short, Plaintiff's testimony boils down to her opinion that because she believed GLOBAL was not in legal existence as of April 2, 2002, than she could not possibly have signed the GLOBAL Agreement.

Notably, Plaintiff could offer no explanation as to why her name appeared on the GLOBAL Agreement which reflects a date of April 2, 2002 and a time "down to the millisecond that the contract was accepted. (Gentile Declaration, Exhibit "C", Pennington Deposition, p. 52: 10-15).

It bears further emphasis that Plaintiff's testimony throughout was couched with lack of recollection given the fact the events took place too long ago.

> Q: Okay. Did you sign any agreement at all for Global Equity Lending, Inc., when the name changed?
>
> A: I couldn't tell you when or where or how, but I can only say that, throughout the whole entire process, they would shoot something on your Web site and it would say "the new agreement," "the new terms and condition," "the new policy." Whatever it was that came on your computer as you logged in, if you didn't sign "yes," you would not get in. So at what time they changed the contract or agreement or a policy or term and condition? I mean, at the end, they were sending me all kinds of stuff that I just didn't even agree with. I couldn't even sign them anymore.
>
> Q: This is 2003, right?
>
> A: During the whole process.
>
> Q: All right. I just want to back up. After you started working for Global Equity Lending?

1  A: The name changed.

2  Q: Okay. The name changed. And you don't have a recollection
3  of your signing an agreement with Global Equity – let me
   finish now. You're anticipating. That's okay. We all do that.
4  But you don't have a recollection around 2003 of signing an
   agreement with Global Equity Lending, Inc.?

5  A: I do not.

6  (Gentile Declaration, Exhibit B, p. 59:2-25 – 60:1-2).

7  The evidence before this Court is that her name does appear on the GLOBAL Agreement

8  dated April 2, 2002. The GLOBAL Agreement bears a date and a time "down to the

9  millisecond". Moreover, as testified by Sandra Croteau:

10 Q: Do you have any specific knowledge of whether Dolores went
   through this application process that you described in these
11 paragraphs that I had you read, or was that just simply based on
   what the process was in January of '03?
12

13 A: Well, what I have is the report showing me that she
   electronically signed the agreement, which means she would
   have gone through and clicked off A through D on Page 10 of
14 her agreement by the report that I got that she started the sign-
   up in April of 2002.
15

16 Q: Sandra, is it possible that Dolores did not check the "I agree" on
   the website when she was applying for a job and actually was
17 provided with this document to physically sign? If you could
   answer.

18 A. I don't believe it would be possible because we wouldn't have
   been able to register her date and signature if she did not click
19 that "I accept" on line.

20 (Gentile Declaration, Exhibit D, p. 54:7-19; 56:21-25 – 57:1-4).

21 The GLOBAL Agreement bearing Plaintiff's electronic signature must be given more

22 weight than Plaintiff's testimony which is, respectfully, self-serving and laced with a failure to

23 recollect. This is why documents such as the GLOBAL Agreement are more probative. As

24 recognized by one court, when a disputed transaction is the result of a writing central to the case

25 and dispositive of the only disputed factual issue, oral testimony cannot be substituted for the

26 writing. (See *Railroad Management Co., LLC v. CFS Louisiana Midstream Co.* (5th Cir., 2005)

27 428 F3rd 214, 219, fn. 2). Accordingly, the documentary evidence here should be given more

28 weight than Plaintiff's testimony.

### III. PLAINTIFF EXECUTED THE WORLD LENDING GROUP INC. MORTGAGE LOAN ORIGINATOR EMPLOYMENT AGREEMENT ON JULY 19, 2002.

An equally and even more compelling reason for this Court to grant GLOBAL's motions is that Plaintiff **manually executed** the World Lending Group, Inc. Mortgage Loan Originator Employment Agreement three months after executing the GLOBAL Agreement. At her deposition, Plaintiff was shown what was marked as Exhibit 2 to her deposition, an Agreement entitled "World Lending Group, Inc. Mortgage Loan Originator Employment Agreement" ("WLG"). (Attached to the Declaration of Counsel, as Exhibit F, is a true and correct copy of that Agreement bearing the deposition exhibit number). Preliminarily Plaintiff admitted and acknowledged that GLOBAL and World Lending Group ("WLG") were the same company, with WLG being the predecessor company to GLOBAL. As testified by Plaintiff:

> Q: But in any event – I'm just trying to understand, ma'am – World Lending Group, Inc., then became Global Equity Lending, Inc.?
>
> A: Yes.
>
> Q: Same company, though, right?
>
> A: Yes.
>
> Q: It basically changed the name, at least in your mind, right?
>
> A: In my mind.
>
> Q: All right. So when you went to work for World Lending Group, Inc., you worked for them until about 2003, correct?
>
> A: Yes.
>
> Q: And then you ended up working for Global Equity Lending, Inc.?
>
> A: The name changed.
>
> Q: The name changed. So basically the same companies?
>
> A: Yes.
>
> Q: This is 2003, right?
>
> A: During the whole process.
>
> Q: All right. I just want to back up. After 2003, you started working for Global Equity Lending?
>
> A: The name changed.

1     (Gentile Declaration, Exhibit "B" page 58 line 9 through p. 59 1-2 and 59:16-20).

2   This statement by Plaintiff was not in a void since it was also confirmed by GLOBAL employee Sandra Croteau's testimony that World Lending Group, Inc. was in fact the predecessor company of GLOBAL.

> Q: (By Mr. Ain) Sandra, at the time in April 2002 who was the employer? Would it have been World Equity Lending or Would it have been World Lending Group?
>
> A: World Lending Group was the name of the company, when I came in 2003. And, again we changed our name to Global Equity Lending.
>
> Q: Okay, Now looking at this document do you know why Global Equity Lending is written there at the top of the page if the company did not change its name until after 2003.
>
> A: How we keep our electronic signatures, this was - - obviously it was an error. The Global Equity Lending agreement should have been World Lending Group agreement. This was clearly an error.
>
> I thought this was the earliest version of the document, since I came in at 2003 and that's the document that we had sent over.

(Gentile Declaration, Exhibit "D" page 42:, lines 1-21).

As the evidence reflects, in reviewing the World Lending Group Agreement (Exhibit 2 to Plaintiff's deposition) with Plaintiff, she **admitted** that she manually executed the WLG Agreement on July 19, 2002. (Gentile Declaration, Exhibit "B" page 37: 7-25 –38: 1-24).

Notably, the WLG Agreement is substantially identical to the GLOBAL Agreement which Plaintiff electronically executed on April 2, 2002. It employs the same contractual language for binding arbitration in Section 7 and the very same requirement for venue in either Cobb County or Gwinnett County Superior Court in the State of Georgia in Section 11. Notably, even the captions are identical. (Gentile Declaration, Exhibit "E" and "F").

Although initially, Plaintiff could not recall how she came to manually execute the World Lending Group Agreement, upon further review of other documents provided to her (which also bore her signature) Plaintiff testified that a Carlton Enloe, a company recruiter, probably presented the World Lending Group Agreement to her personally. (Gentile Declaration, Exhibit "B", p. 46:23-25 – 47:3-11; 51:15-22). Plaintiff no doubt had the opportunity to review the

Global's Supple. Brief & Dec. of Counsel in Support of
Motion to Compel Arbitration & Motion To Change Venue    - 7 -    CASE NO. C 07 6026 MHP
RC1/5127684.1/BL1

World Lending Group Agreement prior to her execution of the same on July 19, 2002.

In short, Plaintiff's sworn testimony was that she manually executed the World Lending Group, Inc. Employment Agreement on July 19, 2002. She also confirmed that the very same Agreement contained the identical language with respect to the obligation to arbitrate and the requisite venue of any action. (Gentile Declaration, Exhibit "B" p. 72:8-25; p. 73: 1-3).

Thus, Plaintiff could hardly deny the fact that she also signed an employment agreement with World Lending Group, Inc., a company which she acknowledged was the same Company as Global Equity Lending, Inc. and that said Agreement also provided the same obligation to submit any controversy, claim of dispute to binding arbitration and that the venue would be in the State of Georgia.

And, she further testified that following her appointment with World Lending Group, Inc. on July 29, 2002 she continued working for that company until that company changed its name to GLOBAL EQUITY LENDING, INC. (Gentile Declaration, Exhibit "B", page 58:18-21).

In short, the overwhelming evidence is that Plaintiff also executed an Agreement with World Lending Group, Inc., the predecessor company to GLOBAL EQUITY LENDING, INC., containing the same arbitration and the same venue selection clause. Not only did she execute the Agreement, but it was hand delivered to her.

## IV. CONCLUSION

The compelling evidence is that Plaintiff executed both the GLOBAL Agreement and the World Leadership Group Agreement. Both Agreements contain identical arbitration and venue selection clauses. Documents containing a person's signature, whether electronic or manual must be given more weight than a person's testimony, especially when that testimony is laced with a failure to recollect. Obviously, this is one reason why signatures are obtained on documents and contracts so there is a written record. Respectfully, Plaintiff can hardly controvert the documents

///
///
///
///

placed before her being evidence of her consent to the Agreement and her consent to its terms. For the above stated reasons, it is respectfully requested that the Court grant GLOBAL's Motions to compel binding arbitration and GLOBAL's motion to dismiss for improper venue.

Dated: June 9, 2008

ROPERS, MAJESKI, KOHN & BENTLEY

By:
GREGORY M. GENTILE
Attorneys for Defendant
GLOBAL EQUITY LENDING INC.