Herbert Hafif, Bar No. 27311
Greg K. Hafif, Bar No. 149515
Michael G. Dawson, Bar No. 150385
**LAW OFFICES OF HERBERT HAFIF, APC**
269 West Bonita Avenue
Claremont, California 91711-4784
(909) 624-1671; Fax (909) 625-7772

Steven L. Miller, Bar No. 106023
16133 Ventura Blvd., Suite 1200
Encino, California 91436
(818) 986-8900; Fax (818) 990-7900

Scott A. Miller, Bar No. 230322
**LAW OFFICES OF SCOTT A. MILLER, APC**
16133 Ventura Blvd., Suite 1200
Encino, California 91436
(818) 788-8081; Fax (818) 788-8080

Attorneys for Plaintiff,
**DOLORES A. ARREGUIN**, for herself and other members of the general public similarly situated

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOLORES A. ARREGUIN, for herself and other members of the general public similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GLOBAL EQUITY LENDING, INC., a Georgia Corporation; and DOES 1 through 10, Inclusive,<br><br>Defendants. | CASE NO. C 07-6026 MHP<br>[Filed: November 29, 2007]<br><br>*[Assigned for all Purposes to: Honorable Judge Marilyn H. Patel]*<br><br>**DECLARATION OF FARRIS E. AIN IN SUPPORT OF SECOND SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION TO COMPEL ARBITRATION AND MOTION TO DISMISS**<br><br>Date :   August 11, 2008<br>Time :   3:00 p.m.<br>Place :   Courtroom 15 |

- 1 -

**DECLARATION OF FARRIS E. AIN IN SUPPORT OF SECOND SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION TO COMPEL ARBITRATION AND MOTION TO DISMISS**

I, Farris E. Ain, declare:

1. I am an attorney duly licensed to practice before all of the state and federal courts in the State of California, including the United States District Court for the Northern District of California. I am one of the attorneys responsible for handling this matter on behalf of Plaintiff. I have personal knowledge of the matters stated herein, and if called upon to testify, I could and would do so competently.

2. Attached hereto as Exhibit "A" is a true and correct copy of World Lending Group, Inc, Mortgage Loan Origination Employment Agreement;

3. Attached hereto as Exhibit "B" is a true and correct copy of correspondence from Defendant, Global Equity Lending, addressed to "To Whom it May Concern;" and

4. Attached hereto as Exhibit "C" is a true and correct copy of excerpts from the Commercial Arbitration Rules of the American Arbitration Association obtained from the Internet at the website www.adr,irg/sp.asp?id=22440&printable=true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this Declaration was executed on July 24, 2008, at Claremont, California.

_____
Farris E. Ain

Law Offices of
HERBERT HAFIF
269 W. Bonita Avenue
Claremont, CA 91711

- 2 -

DECLARATION OF FARRIS E. AIN IN SUPPORT OF SECOND SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION TO COMPEL ARBITRATION AND MOTION TO DISMISS

# EXHIBIT A

## WORLD LENDING GROUP, INC.
## MORTGAGE LOAN ORIGINATOR EMPLOYMENT AGREEMENT

This Mortgage Loan Originator Employment Agreement ("Agreement"), made and entered into effective as of the date of execution by the parties hereto, is by and between World Lending Group, Inc., a Georgia corporation (hereinafter "WLG"), and the undersigned individual (hereinafter "Loan Originator");

### RECITALS

WHEREAS, WLG is engaged in the activity of originating loans evidenced by notes ("Notes") and secured by mortgages ("Mortgages") on real property (hereinafter the Mortgages and Notes are collectively referred to as "Loans") for mortgage lenders and is desirous of employing Loan Originator to obtain and prepare loan applications and other materials from prospective borrowers ("Applicants");

WHEREAS, Loan Originator is desirous of becoming employed by WLG to assist WLG in obtaining and preparing loan applications and other materials from Applicants;

NOW, THEREFORE, in consideration of mutual promises of and benefits to be derived by the parties WLG, and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, WLG hereby agrees to employ Loan Originator, and Loan Originator hereby agrees to be employed by WLG, subject to the following terms and conditions:

1. Loan Originator's Duties, Responsibilities, Limitations on Authority.

   1.1 Generally. Loan Originator shall use his or her best efforts to originate real estate loans on WLG's behalf by contacting the public and members of the real estate profession. All originations shall be done in a prudent manner and shall conform to the standards required by WLG as well as all state, federal and local regulations and statutes. In particular, Loan Originator covenants that he or she shall comply with the Federal Equal Credit Opportunity Act and its Regulation B, the Fair Housing Act, the Home Mortgage Disclosure Act and its Regulation C, the Federal Truth-in-Lending Act and Regulation Z, and the Real Estate Settlement Procedures Act and its Regulation X. Loan Originator understands and agrees that Loan Originator has an obligation to all Applicants to ensure that Applicants are fully advised of the various loan options available to them prior to obtaining and submitting an application to WLG. Loan Originator shall counsel each Applicant by analyzing the Applicant's income and debt and pre-qualifying the Applicant to determine what the Applicant can afford; consulting with the Applicant about home financing, including advising Applicant about different loan products, closing costs, and monthly payments; assisting in collecting from Applicant financial information (including tax returns and bank statements) necessary for the application process; maintaining regular contact with Applicant, WLG and others between the time the application is submitted to WLG and the loan closing in order to apprise Applicant of the status of the application and to gather any additional information as needed. As to all applications which are accepted for processing, Loan Originator voluntarily agrees to complete the application (including taking information from Applicants and assisting Applicants in filling out the application), submit the application to WLG, and assist in attaining such supplementary information as may be requested of Loan Originator by the processing agent in the event the Applicant does not respond to the processing agent's information requests in a timely manner.

   1.2 Compliance With WLG Rules and Guidelines. The Loan Originator agrees to comply with all rules and guidelines set forth in the Mortgage Loan Originator Agreement Rules and Guidelines ("Rules and Guidelines") and other written policies, instructions and procedures, either now existing or as issued from time to time by WLG, which by this reference are made part of this Agreement. The Rules and Guidelines are those rules and guidelines published in writing from time to time by WLG to its Loan Officers containing certain additional requirements imposed on WLG Loan Officers as part of their contractual relationship with WLG and other matters affecting WLG Loan Officers. WLG also publishes policies and procedures of WLG and the operational rules and regulations required by the various regulatory agencies.

   1.3 Business Cards, Advertising. Loan Originator shall have the authority to represent through business cards, announcements, or other documents, that Loan Originator is an employee of WLG performing mortgage loan origination services. WLG will provide such advertising and promotional materials as it deems appropriate. Loan Originator shall not engage in any additional advertising or use any marketing materials that are not approved in advance shall first submit such advertising or marketing materials to WLG for approval before circulating them to the public.

1.4 <u>Other Contractual Affiliations</u>. Subject to the provisions of this Paragraph 1.4, Loan Originator may engage in other business activities to the extent such other activities do not interfere or conflict with Loan Originator's employment duties hereunder. Notwithstanding the foregoing, during the term of this Agreement, Loan Originator shall not, except with respect to Exempt Business Activities (as defined in Section 6.4 hereof), if any: i) be associated with, be a representative of, or enter into a contractual agreement of any kind with any other mortgage brokerage or mortgage banking firm; ii) maintain any mortgage broker license; or iii) originate any real estate loans except on behalf of WLG. Loan Originator agrees to immediately notify WLG in writing if Loan Originator acquires or obtains any interest in or affiliation with any other mortgage brokerage or mortgage banking firm, or engages in any employment relating to the origination of real estate loans, either directly or indirectly, whether alone or with any person or entity other than WLG. Loan Originator shall immediately notify WLG if Loan Originator becomes involved in any activity that would create the possibility of a conflict of interest on the part of Loan Originator with respect to WLG or any services offered by or on behalf of WLG.

1.5 <u>No Other Authority</u>. Except as set forth in this Paragraph 1, Loan Originator shall not have any authority, and shall under no circumstances hold himself or herself out to any person as having any authority, to represent or obligate WLG in any manner.

2. <u>Compensation</u>. For all services to be rendered hereunder, Loan Originator shall be paid on a commission basis only, in the amounts and at the times set forth on WLG's published commission schedules as amended from time to time. Loan Originator's compensation shall be paid in accordance with WLG's normal commission payroll practices in effect from time to time and shall be reported on Federal form W-2 as employee compensation, subject to FICA, FUTA, and income tax withholding as required by federal, state, and local laws. Loan Originator agrees that, where required by law, he or she shall disclose to customers all the fees that Loan Originator will be paid for services rendered in connection with this Agreement in a form approved by WLG and in accordance with state and federal regulations. WLG shall, in its sole and absolute discretion, have the right to change, modify, alter, or decrease any commissions payable pursuant to this Agreement; provided, however, that any changes, modifications, alterations, or decreases shall be effective only on a prospective basis. Except as set forth above, Loan Originator shall not be entitled to receive any other compensation or benefits from WLG of any kind or nature.

3. <u>Term and Termination</u>. This Agreement shall commence on the date of execution of this Agreement and shall continue until it is terminated in accordance with the provisions hereof. This written Agreement is terminable at will by either party upon advance written notice of seven (7) days. This Agreement shall also terminate by operation of law or upon the death or disability of Loan Originator. Upon termination of this Agreement, except as otherwise provided hereunder and except as to commissions earned by Loan Originator prior to the effective date of termination, which shall be paid by WLG to Loan Originator within a reasonable period of time, the parties shall have no further rights or obligations with respect to each other.

4. <u>Loan Applications, Programs</u>. WLG, in its sole discretion, may reject any application for reasons of its own business convenience, and nothing herein shall be construed to require the processing of any loan application presented by Loan Originator. WLG shall have the sole discretion of determining what loan programs it will offer and what Loans it will make. All Loans shall be closed in the name of WLG or such other names as WLG shall determine.

5. <u>Representations</u>. Loan Originator agrees that at all times during the term of this Agreement that Loan Originator shall devote such time and effort as are necessary to faithfully perform to the best of Loan Originator's ability Loan Originator's duties and responsibilities hereunder. Loan Originator specifically represents to WLG that by entering into this Agreement, Loan Originator does not and will not conflict with or violate any other agreement or understanding to which the Loan Originator is a party, or any law, regulation, or order, including but not limited to any disciplinary orders or requirements of any regulatory agency to which the Loan Originator is subject. Loan Originator agrees that Loan Originator is and will continue to be in compliance with all applicable state and federal laws, rules and regulations governing the business contemplated by this Agreement.

6. <u>Covenants</u>.

6.1 <u>General</u>. Loan Originator acknowledges and agrees that WLG is the owner of the rights to all Applicants placing Loans through WLG, and that these Applicants comprise a substantial part of the goodwill of WLG. To protect the business and goodwill of WLG and all confidential information belonging to WLG, the parties have agreed to a limited period of non-competition, non-solicitation, and to a nondisclosure of confidential information following termination of this Agreement. Such limitations relate solely to the business of WLG, and to WLG's Applicants, however, and are not

intended to prevent Loan Originator from rendering mortgage origination services, if Loan Originator so desires.

6.2 <u>Non-Competition</u>. Upon termination of this Agreement, Loan Originator agrees that for a period of one (1) year following such termination Loan Originator will not, without the written consent of WLG, directly or indirectly solicit or accept loan applications from, or perform any of the services Loan Originator performed within the scope of this Agreement for, any Applicant or WLG employee (other than Loan Originator's Exempt Persons as hereinafter defined) with whom Loan Originator had personal contact or established a business relationship during the term of this Agreement. Exempt Persons shall consist of: (i) any persons, identified by name and city and state of residence, and with respect to whom Loan Originator provides written documentation as of the date of execution of this Agreement establishing that such persons are existing customers of Loan Originator, and (ii) any persons, identified by name and city and state of residence, and with respect to whom Loan Originator provides written documentation as of the date of execution of this Agreement establishing that such persons are contractually affiliated with Loan Originator, and who thereafter become Loan Originators of WLG within thirty (30) days from the date of this Agreement.

6.3 <u>Confidential and Proprietary Information</u>. Loan Originator acknowledges that, in the course of Loan Originator's employment with WLG pursuant to this Agreement, Loan Originator will become acquainted with confidential information belonging to WLG. This information relates to persons, firms, and corporations that are or may become customers, financing entities, or accounts of WLG during the term of this Agreement; this provision includes the names of all customers, lenders, rates, and requirements. Loan Originator will not, without the written consent of WLG, disclose or make any use of such confidential information. All Loans placed and all WLG records of Applicants or of any company business, whether prepared by Loan Originator during the term of this Agreement or otherwise coming into Loan Originator's possession and control, shall remain and be the exclusive property of WLG and be surrendered to WLG upon termination of this Agreement. Loan applications, files, forms and other documentation procured during the term of this Agreement are the property of WLG and shall not be removed from the present premises or control of WLG without its express written consent. Any such loan application, files, or documents, shall be surrendered to WLG immediately upon the termination of this Agreement.

6.4 <u>Organizing Competitive Business/Soliciting WLG Originators or Employees</u>. Except for an Exempt Business Activity, Loan Originator agrees that during the term of this Agreement, Loan Originator will not directly or indirectly undertake the planning or organizing of any business activity competitive with the work Loan Originator performs as an employee pursuant to the terms of this Agreement. Loan Originator agrees that Loan Originator will not, for a period of two (2) years following termination of this Agreement, directly or indirectly, solicit any of WLG's independent contractors, loan officers or employees, with whom Loan Originator during the term of this Agreement had personal contact (but excluding any of Loan Originator's Exempt Persons) to work for Loan Originator or any other competitive company. "Exempt Business Activity" shall mean any business activity with respect to which Loan Originator provides written documentation as of the date of execution of this Agreement establishing that Loan Originator is already engaged in such business activity, and that, to the reasonable satisfaction of WLG, in such business activity Loan Originator does not originate the types of Loans offered by WLG.

6.5 <u>Indemnification</u>. Loan Originator shall indemnify WLG for and hold it harmless from and against any and all claims, losses, liabilities, damages, taxes, penalties, fines, forfeitures, reasonable legal fees and expenses, judgments, and other costs and expenses that WLG may sustain arising and/or resulting from any claim, demand, defense or assertion based on or grounded upon, or resulting from a breach of any representation, warranty, or covenant by Loan Originator under this Agreement. This indemnity shall survive the termination of this Agreement.

7. <u>Arbitration of Grievances</u>.

7.1 <u>General</u>. The Parties agree that, except as specifically provided to the contrary in this Agreement, any controversy, claim or dispute arising out of or relating to this Agreement ("Grievance"), between the Loan Originator, on the one part, and WLG and/or any of its officers and employees, or any of them, on the other part shall be resolved exclusively by arbitration in accordance with this Paragraph 7. For purposes of this Paragraph 7, the terms "Party" and "Parties" include WLG, the Loan Originator and other officers and employees of WLG. All Grievances, unresolved in the normal course of business, to the extent that any Party wishes to pursue the matter further, shall be resolved by arbitration in accordance with the Commercial Arbitration Rules ("Rules") of the American Arbitration Association then in effect, except that, or in addition to such Rules: i) in order to assure neutrality and impartiality of the arbitrator(s), and to preserve the confidentiality of proprietary information, the arbitrator(s) shall not be any present or past owner, officer, director, employee, consultant, contractor, agent, attorney or other representative of any mortgage company, mortgage broker, mortgage banker, or of any affiliate of any of them; ii) the locale where the arbitration shall be held is the principal business location of WLG in Norcross, Georgia; iii) a transcript shall be made on the proceeding; and iv) the

arbitrator's(s') award shall state their findings of fact and conclusions of law. The award, including such findings and conclusions may be reviewed, vacated, modified or corrected upon application or petition of any Party brought within thirty (30) days after the date of the award, by a court of competent jurisdiction, provided that in addition to the grounds stated in the United States Arbitration Code, 9 U.S.C. § 1, and following, or in any other applicable law or statute, the court may also vacate, modify or correct the award if the conclusions of law are contrary to law, or if the findings of fact are not supported by the facts (as determined by whether there was any pertinent and material evidence to support the findings). Otherwise, or in compliance with the court's review, the decision of the arbitrator(s) shall be final and binding. Judgment upon the award rendered by the arbitrator(s), or judgment upon the award as reviewed by the court, may be entered in any court having jurisdiction thereof.

7.2 Waiver of Litigation. The Parties acknowledge and agree that they are engaged in, and that this Agreement evidences transactions involving, interstate commerce and that, except as specifically provided to the contrary in this Agreement, this Paragraph 7 is and shall be the Parties' exclusive remedy for any Grievance arising out of or relating to this Agreement, or the breach thereof. Except as specifically provided to the contrary in this Agreement, the Parties expressly waive the right to litigate in a judicial forum all Grievances and waive the right to trial by jury. The Parties further agree that the findings of fact issued by the arbitrator(s), as reviewed, if applicable, shall be binding on them in any subsequent arbitration, litigation or other proceeding.

7.3 No Condition Precedent to Action and Power of Arbitrators. Anything herein or elsewhere contained to the contrary notwithstanding, WLG shall not be required to negotiate, arbitrate or litigate as a condition precedent to taking any action under this Agreement. The Parties expressly authorize the Arbitrator(s) to fashion and award any type of remedy that could be awarded by a court, including such equitable or extraordinary remedies as temporary and permanent injunctive relief.

7.4 Extraordinary Relief. The Parties agree that WLG has the right to seek preliminary and temporary restraining orders, injunctions and other extraordinary relief (such orders, injunctions and other relief referred to as "Extraordinary Relief") under Paragraph 6 of this Agreement without complying with this Paragraph 7. Without limitation, the Parties agree that the requirements for good faith arbitration under this Paragraph 7 do not preclude WLG from seeking in an arbitral or in a judicial forum, or in both, Extraordinary Relief to protect its rights under Paragraph 6 of this Agreement. This Paragraph 7 shall not be deemed to preclude or narrow the judicial or arbitral powers regarding Extraordinary Relief.

8. Assignment. This Agreement may be assigned by WLG in the event of a bona fide sale or transfer of ownership or control of the business to another person or entity; provided however, that the assignee shall assume all obligations of WLG herein, in which case WLG shall be released of any further liability to the Loan Originator hereunder. The personal character and skill of the Loan Originator are a material inducement to WLG to enter into this Agreement, and any attempt by Loan Originator to assign this Agreement or to assign any rights (including the right to receive commissions) which Loan Originator may have hereunder shall be null and void, and such attempt to assignment shall be considered a repudiation and termination of this Agreement by Loan Originator.

9. Amendment. This is the entire Agreement of the parties and any amendment or modification thereof shall be in writing and signed by both parties. This Agreement is binding upon the parties, their heirs and assigns.

10. Waiver. The waiver by WLG of any breach or default by Loan Originator shall not operate or be construed as waiver of any subsequent breach or default by Loan Originator.

11. Governing Law. The enforcement of this Agreement shall be governed by the laws of the State of Georgia and venue shall be in Cobb County or Gwinnett County Superior Court, State of Georgia.

12. Severability. The provisions of this Agreement are severable, and if one or more provisions thereof are found to be unenforceable in whole or in part, the remaining provisions and any partially enforceable provisions will nevertheless be binding and enforceable to the full extent of the law.

13. Fiduciary Obligation. Loan Originator acknowledges that WLG, as a licensed mortgage lender/broker, may bear the responsibility to third parties for all actions of its employees. Loan Originator hereby acknowledges and agrees that Loan Originator is responsible for the content and quality of each application taken and each Loan submitted to WLG. Loan Originator understands that the submission of a loan application containing false information is a crime and that loan fraud includes, but is not limited to submission of inaccurate information, including false statements on loan

application(s) and falsification of documents purporting to substantiate credit, employment, deposit and asset information, personal information including identity, ownership/non-ownership of real property; forgery of partially or predominantly accurate information; incorrect statements regarding current occupancy or intent to maintain minimum occupancy as stated in the security instrument; lack of due diligence by Loan Originator, including failure to obtain all information required by the application and failure to request further information as dictated by borrower's response to other questions; unquestioned acceptance of information or documentation which is known, should be known, or should be suspected to be inaccurate; simultaneous or consecutive processing of multiple owner occupied loans from one applicant supplying different information on each application; allowing an applicant or interested third-party to "assist" with the processing of the loan; Loan Originator's non-disclosure of relevant information. Loan Originator acknowledges that fraudulent loans cannot be sold into the secondary market and, if sold, will require repurchase by WLG and fraudulent loans damage WLG's contractual agreements with its investors and mortgage insurance providers. If Loan Originator participates in loan fraud of any kind, the following is a list of a few of the potential consequences that may result to Loan Originator: criminal prosecution; immediate termination of this Agreement; loss of lender access due to exchange of information between lenders, mortgage insurance companies, including submission of information to investors (FHLMC/FNMA), police agencies, and the Department of Financial Institutions; civil action by WLG; civil action by applicant/borrower or other parties to the transaction.

14. **Previous Agreements.** This Agreement supersedes any and all previous agreements between the parties hereto.

IN WITNESS WHEREOF, the parties have executed this Agreement by affixing their signatures thereto.

New Loan Originator's Acknowledgments

You must check the following acknowledgments to continue:

☑ A. My becoming an employee of World Lending Group will not violate the terms of or interfere with any contract, agreement or business relationship that I have or have had with any third party, including without limitation, World Financial Group, Inc..

☑ B. Upon becoming an employee of World Lending Group, I will not engage in any business practice or behavior, nor will I take any action, which will result in any violation of any restrictions or covenants to which I am subject pursuant to any agreement to which I was previously a party, including, without limitation, any agreement with World Financial Group, Inc.

☑ C. World Lending Group, its officers, directors, shareholders and employees have not induced me in any way whatsoever to terminate any contract, agreement or business relationship that I presently have or have had with any third party, including without limitation, any agreement with World Financial Group, Inc.

☑ D. I understand that these acknowledgments constitute a part of my World Lending Group, Inc., Mortgage Loan Originator Employment Agreement to which I am bound and are material representations upon which World Lending Group shall rely in its acceptance of my Mortgage Loan Originator Employment Agreement.

ASSOCIATE:    WORLD LENDING GROUP, INC.

Print Name: _Delores Arreguin_    By: _____

Signature: _[signature]_

Date: 7-19-02

GEL-025

EXHIBIT B

May. 3. 2006 4:54PM            No. 5394   P. 1



To Whom It May Concern:

Mark Layton asked me to send you our policy and a statement about reimbursement of company expenses. Attached is the section on reimbursement from our handbook:

"The company's commission policy is structured to provide compensation for all expenses. The company does not provide additional compensation for an employee's use of his or her personal vehicle. (from page 80 of handbook #15)"

Additionally the company doesn't reimburse for nor provide cell phones, automobile expenses and office expenses.

Bill Croteau, PHR, PMP
Director of Human Resources
World Leadership Group, Inc.

11675 Johns Creek Court • Suwanee, GA 30024
(678) 966-7800 [phone]



May 3, 2006

Re: Dolores Arreguin

To Whom It May Concern:

The purpose of this letter is to confirm that the above mentioned is currently employed with Global Equity Lending as a Loan Originator/Senior Marketing Director. This employee is a commission only employee. Feel free to contact me at 678-966-7603 if you have any questions.

Sincerely,

Mark Layton
Director of Commissions

3355 Johns Creek Court • Suwanee, GA 30024
(678) 966-7600 (phone)

EXHIBIT C

Case 3:07-cv-06026-MHP    Document 41-2    Filed 07/28/2008    Page 13 of 20

manner required by law.

(b) The arbitrator need not render a reasoned award unless the parties request such an award in writing prior to appointment of the arbitrator or unless the arbitrator determines that a reasoned award is appropriate.

R-43. Scope of Award

(a) The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract.

(b) In addition to a final award, the arbitrator may make other decisions, including interim, interlocutory, or partial rulings, orders, and awards. In any interim, interlocutory, or partial award, the arbitrator may assess and apportion the fees, expenses, and compensation related to such award as the arbitrator determines is appropriate.

(c) In the final award, the arbitrator shall assess the fees, expenses, and compensation provided in Sections R-49, R-50, and R-51. The arbitrator may apportion such fees, expenses, and compensation among the parties in such amounts as the arbitrator determines is appropriate.

(d) The award of the arbitrator(s) may include:

(i) interest at such rate and from such date as the arbitrator(s) may deem appropriate; and

(ii) an award of attorneys' fees if all parties have requested such an award or it is authorized by law or their arbitration agreement.

R-44. Award upon Settlement

If the parties settle their dispute during the course of the arbitration and if the parties so request, the arbitrator may set forth the terms of the settlement in a "consent award." A consent award must include an allocation of arbitration costs, including administrative fees and expenses as well as arbitrator fees and expenses.

R-45. Delivery of Award to Parties

Parties shall accept as notice and delivery of the award the placing of the award or a true copy thereof in the mail addressed to the parties or their representatives at the last known addresses, personal or electronic service of the award, or the filing of the award in any other manner that is permitted by law.

R-46. Modification of Award

Within 20 days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator, through the AAA, to correct any clerical, typographical, or computational errors in the award. The arbitrator is not empowered to redetermine the merits of any claim already decided. The other parties shall be given 10 days to respond to the request. The arbitrator shall dispose of the request within 20 days after transmittal by the AAA to the arbitrator of the request and any response thereto.

R-47. Release of Documents for Judicial Proceedings

The AAA shall, upon the written request of a party, furnish to the party, at the party's expense, certified copies of any papers in the AAA's possession that may be required in judicial proceedings relating to the arbitration.

R-48. Applications to Court and Exclusion of Liability

(a) No judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate.

(b) Neither the AAA nor any arbitrator in a proceeding under these rules is a necessary or proper party in judicial proceedings relating to the arbitration.

(c) Parties to an arbitration under these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof.

(d) Parties to an arbitration under these rules shall be deemed to have consented that neither the AAA nor any arbitrator shall be liable to any party in any action for damages or injunctive relief for any act or omission in connection with any arbitration under these rules.

R-49. Administrative Fees

As a not-for-profit organization, the AAA shall prescribe an initial filing fee and a case service fee to compensate it for the cost of providing administrative services. The fees in effect when the fee or charge is incurred shall be applicable. The filing fee shall be advanced by the party or parties making a claim or counterclaim, subject to final apportionment by the arbitrator in the award. The AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees.

R-50. Expenses

The expenses of witnesses for either side shall be paid by the party producing such witnesses. All other expenses of the arbitration, including required travel and other expenses of the arbitrator, AAA representatives, and any witness and the cost of any proof produced at the direct request of the arbitrator, shall be borne equally by the parties, unless they agree otherwise or unless the arbitrator in the award assesses such expenses or any part thereof against any specified party or parties.

R-51. Neutral Arbitrator's Compensation

(a) Arbitrators shall be compensated at a rate consistent with the arbitrator's stated rate of compensation.

(b) If there is disagreement concerning the terms of compensation, an appropriate rate shall be established with the arbitrator by the AAA and confirmed to the parties.

(c) Any arrangement for the compensation of a neutral arbitrator shall be made through the AAA and not directly between the parties and the arbitrator.

R-52. Deposits

The AAA may require the parties to deposit in advance of any hearings such sums of money as it deems necessary to cover the expense of the arbitration, including the arbitrator's fee, if any, and shall render an accounting to the parties and return any unexpended balance at the conclusion of the case.

O-8. Costs

The costs associated with applications for emergency relief shall initially be apportioned by the emergency arbitrator or special master, subject to the power of the panel to determine finally the apportionment of such costs.

ADMINISTRATIVE FEES

The administrative fees of the AAA are based on the amount of the claim or counterclaim. Arbitrator compensation is not included in this schedule. Unless the parties agree otherwise, arbitrator compensation and administrative fees are subject to allocation by the arbitrator in the award.

In an effort to make arbitration costs reasonable for consumers, the AAA has a separate fee schedule for consumer-related disputes. Please refer to Section C-8 of the *Supplementary Procedures for Consumer-Related Disputes* when filing a consumer-related claim.

The AAA applies the *Supplementary Procedures for Consumer-Related Disputes* to arbitration clauses in agreements between individual consumers and businesses where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use. The AAA will have the discretion to apply or not to apply the Supplementary Procedures and the parties will be able to bring any disputes concerning the application or non-application to the attention of the arbitrator. Consumers are not prohibited from seeking relief in a small claims court for disputes or claims within the scope of its jurisdiction, even in consumer arbitration cases filed by the business.

Fees

An initial filing fee is payable in full by a filing party when a claim, counterclaim or additional claim is filed. A case service fee will be incurred for all cases that proceed to their first hearing. This fee will be payable in advance at the time that the first hearing is scheduled. This fee will be refunded at the conclusion of the case if no hearings have occurred. However, if the Association is not notified at least 24 hours before the time of the scheduled hearing, the case service fee will remain due and will not be refunded.

These fees will be billed in accordance with the following schedule:

| Amount of Claim | Initial Filing Fee | Case Service Fee |
|---|---|---|
| Above $0 to $10,000 | $750 | $200 |
| Above $10,000 to $75,000 | $950 | $300 |
| Above $75,000 to $150,000 | $1,800 | $750 |
| Above $150,000 to $300,000 | $2,750 | $1,250 |
| Above $300,000 to $500,000 | $4,250 | $1,750 |
| Above $500,000 to $1,000,000 | $6,000 | $2,500 |
| Above $1,000,000 to $5,000,000 | $8,000 | $3,250 |
| Above $5,000,000 to $10,000,000 | $10,000 | $4,000 |
| | | |

| | | |
|---|---|---|
| Above $10,000,000 | * | * |
| Nonmonetary Claims** | $3,250 | $1,250 |

Fee Schedule for Claims in Excess of $10 Million.

The following is the fee schedule for use in disputes involving claims in excess of $10 million. If you have any questions, please consult your local AAA office or case management center.

| Claim Size | Fee | Case Service Fee |
|---|---|---|
| $10 million and above | Base fee of $12,500 plus .01% of the amount of claim above $10 million. | $6,000 |
| | Filing fees capped at $65,000 | |

** This fee is applicable only when a claim or counterclaim is not for a monetary amount. Where a monetary claim amount is not known, parties will be required to state a range of claims or be subject to the highest possible filing fee.

Fees are subject to increase if the amount of a claim or counterclaim is modified after the initial filing date. Fees are subject to decrease if the amount of a claim or counterclaim is modified before the first hearing.

The minimum fees for any case having three or more arbitrators are $2,750 for the filing fee, plus a $1,250 case service fee. Expedited Procedures are applied in any case where no disclosed claim or counterclaim exceeds $75,000, exclusive of interest and arbitration costs.

Parties on cases held in abeyance for one year by agreement, will be assessed an annual abeyance fee of $300. If a party refuses to pay the assessed fee, the other party or parties may pay the entire fee on behalf of all parties, otherwise the matter will be closed.

Refund Schedule

The AAA offers a refund schedule on filing fees. For cases with claims up to $75,000, a minimum filing fee of $300 will not be refunded. For all other cases, a minimum fee of $500 will not be refunded. Subject to the minimum fee requirements, refunds will be calculated as follows:

- 100% of the filing fee, above the minimum fee, will be refunded if the case is settled or withdrawn within five calendar days of filing.
- 50% of the filing fee will be refunded if the case is settled or withdrawn between six and 30 calendar days of filing.
- 25% of the filing fee will be refunded if the case is settled or withdrawn between 31 and 60 calendar days of filing.

No refund will be made once an arbitrator has been appointed (this includes one arbitrator on a three-arbitrator panel). No refunds will be granted on awarded cases.

Note: the date of receipt of the demand for arbitration with the AAA will be used to calculate refunds of filing fees for both claims and counterclaims.

Hearing Room Rental

The fees described above do not cover the rental of hearing rooms, which are available on a rental basis. Check with the AAA for availability and rates.

© 2007 American Arbitration Association, Inc. All rights reserved. These Rules are the copyrighted property of the American Arbitration Association (AAA) and are intended to be used in conjunction with the AAA's administrative services. Any unauthorized use or modification of these Rules may violate copyright laws and other applicable laws. Please contact 800.778.7879 or websitemail@adr.org for additional information.

AAA235

- AAA MISSION & PRINCIPLES
- PRIVACY POLICY
- TERMS OF USE
- TECHNICAL RECOMMENDATIONS
- ©2007 AMERICAN ARBITRATION ASSOCIATION. ALL RIGHTS RESERVED

# PROOF OF SERVICE

STATE OF CALIFORNIA ) ss.
COUNTY OF LOS ANGELES )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 269 West Bonita Avenue, Claremont, CA 91711.

On July 28, 2008, I served the foregoing document described as: **DECLARATION OF FARRIS E. AIN IN SUPPORT OF SECOND SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION TO COMPEL ARBITRATION AND MOTION TO DISMISS**

[ ]  by placing the true copies thereof enclosed in sealed envelopes addressed as follows:

[X]  by placing [ ] the original [X] a true copy thereof enclosed in sealed envelopes addressed as follows:

**[SEE ATTACHED MAILING LIST]**

[X]  I deposited each envelope in the mail at Claremont, California.[1] The envelope was mailed with postage thereon fully prepaid.

[X]  As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the United States Post Office on that same day with postage thereon fully prepaid at Claremont, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]  As follows: I am "readily familiar" with the firm's practice for delivering overnight envelopes or packages to an authorized courier or driver authorized by the express service carrier to receive documents, in an envelope or package designated by the express service carrier with delivery fees paid or provided for, addressed to the person on whom it is to be served, at the address as last given by that person on any document filed in the cause and served on the party making service.

[X]  By filing with the U.S. District Court's CM/ECF filing system.

---

[1] By mail signature must be of person depositing envelope in mail slot, box or bag.

Law Offices of
HERBERT HAFIF
269 W. Bonita Avenue
Claremont, CA  91711
Original document produced
on recycled paper.

- 3 -

DECLARATION OF FARRIS E. AIN IN SUPPORT OF SECOND SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION TO COMPEL ARBITRATION AND MOTION TO DISMISS

1  [ ]  (State or Federal) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

2
3  [X]  (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

4  Executed on July 28, 2008, at Claremont, California.

*Gwendolyn Simmons*
Gwendolyn Simmons

-4-

**DECLARATION OF FARRIS E. AIN IN SUPPORT OF SECOND SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION TO COMPEL ARBITRATION AND MOTION TO DISMISS**

## SERVICE LIST

*Dolores A. Arreguin v. Global Equity Lending, Inc.*
U.S.D.C. Case No. C 07 6027 MHP

Steven L. Miller, Bar No. 106023
16133 Ventura Blvd., Suite 1200
Encino, California 91436
(818) 986-8900; Fax (818) 990-7900

Scott A. Miller, Bar No. 230322
**LAW OFFICES OF SCOTT A. MILLER, APC**
16133 Ventura Blvd., Suite 1200
Encino, California 91436
(818) 788-8081; Fax (818) 788-8080

**Co-counsel for Plaintiff, Dolores A. Arreguin**

Richard M. Williams, Esq.
Gregory M. Gentile, Esq.
J. Mark Thacker, Esq.
**ROPERS, MAJESKI, KOHN & BENTLEY**
50 West San Fernando Street, Suite 1400
San Jose, CA   95113
(408) 287-6262; Fax (408) 918-4501

**Counsel for Defendant, Global Equity Lending, Inc.**

Law Offices of
HERBERT HAFIF
269 W. Bonita Avenue
Claremont, CA 91711
Original document produced
on recycled paper.

-5-

DECLARATION OF FARRIS E. AIN IN SUPPORT OF SECOND SUPPLEMENTAL BRIEF IN
OPPOSITION TO MOTION TO COMPEL ARBITRATION AND MOTION TO DISMISS