```
 1  RICHARD M. WILLIAMS (SBN 68032)
    GREGORY M. GENTILE (SBN 142424)
 2  J. MARK THACKER (SBN 157182)
    ROPERS, MAJESKI, KOHN & BENTLEY
 3  50 West San Fernando Street, Suite 1400
    San Jose, CA 95113
 4  Telephone:  (408) 287-6262
    Facsimile:  (408) 918-4501
 5
    Attorneys for Defendant
 6  GLOBAL EQUITY LENDING INC.
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOLORES A. ARREGUIN, for herself and other members of the general public similarly situated,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>GLOBAL EQUITY LENDING, INC., a Georgia Corporation; and DOES 1 through 10, Inclusive,<br><br>　　　　　Defendant. | CASE NO. C 07 6026 MHP<br><br>**SUPPLEMENTAL BRIEF ON WAIVER PROVISIONS UNDER LABOR CODE SECTIONS 2802, 2804 AND ARBITABILITY OF WAIVER ISSUE**<br><br>Date:　　　August 11, 2008<br>Time:　　　3:00 p.m.<br>Courtroom: 15, 18th Floor<br>Judge:　　Hon. Marilyn Hall Patel<br><br>Complaint filed: November 29, 2007 |

## I. INTRODUCTION

At the July 10, 2008 hearing, the Court found that Plaintiff executed an Employment Agreement with GLOBAL EQUITY LENDING INC. which contained a provision requiring binding arbitration. The Court has requested that the parties brief the issue of whether California Labor Code §§2802 and 2804 supersede, as a matter of law, a contract signed by a California employee with an employer which contains venue and arbitration provisions that require any disputes as to payment or reimbursement to the employee to be arbitrated and decided in another state, pursuant to that state's law. This Court suggested that because Labor Code §2804 makes

Supplemental Brief on Labor
Code Sections 2802 and 2804                     - 1 -                    CASE NO. C 07 6026 MHP
RC1/5158093.1/BLJ

the reimbursement right established by §2802 non-waivable, as a matter of law, the provisions of the subject employment contract between Plaintiff and Defendant that requires arbitration in Georgia and application of Georgia law are not only unenforceable but irrelevant.

Respectfully, GLOBAL disagrees. As set forth below, GLOBAL contends that the above presents an issue for the Arbitrator, and not the Court. The sole issue that was presented for resolution at the hearing on July 10, 2008 was whether Plaintiff executed the Employment Agreement. The evidence was that she did. Since the Agreement requires binding arbitration, this matter must be referred to the arbitrator and it must be the arbitrator who determines the applicability of any defenses, including that of waiver/unconscionability. Clearly, the contractual language mandating arbitration is sweeping and provides that the power of the arbitrator is plenary. Moreover, there are sufficient safeguards built into the subject arbitration agreement to ensure Plaintiff obtains a fair hearing. Lastly, the choice of law provision applying Georgia law can always be severed from the remainder of the contract if an arbitrator determines it appropriate. In summary, this Court should give effect to the parties' intent in executing a contract requiring that any and all disputes arising out of the relationship or the contract be submitted to binding arbitration.

## II. THE SUBJECT CONTRACT'S ARBITRATION AGREEMENT VESTS PLENARY POWER IN THE ARBITRATOR TO DECIDE ALL ISSUES ARISING OUT OF OR RELATING TO THE AGREEMENT.

The subject agreement provides that the arbitrator has plenary power over the controversy between the parties. Paragraph 7.1 states, in relevant part:

> 7.1 General. **The Parties agree that, except as specifically provided to the contrary in this Agreement, any controversy, claim or dispute arising out of or relating to this Agreement ("Grievance"), between the [Plaintiff], on the one part, and [GLOBAL], and any of its officers and employees, or any of them, on the other part, shall be resolved exclusively by arbitration in accordance with this Paragraph 7...**

Unquestionably, the agreement to arbitrate is governed by the Federal Arbitration Act. [The Act]. Paragraph 7.1 of the Agreement expressly refers to The United States Arbitration Code 9 U.S.C. §1. The Act provides that contractual agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the

revocation of any contract." [9 U.S.C. § 2.] The primary congressional purpose of the Act is "to insure judicial enforcement of privately made agreements to arbitrate." [*Dean Witter Reynolds, Inc. v. Byrd* (1985) 470 U.S. 213, 219.] The Act "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." [*Id.* at 218.]

Further, the United States Supreme Court has interpreted the Act as creating a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. [*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.* (1983) 460 U.S. 1, 24.] The Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language, or an allegation of waiver, delay, or a like defense to arbitrability. [*Id.* at 25.]

*Instructive is Buckeye Check Cashing Inc., v. Cardegna* (2006) 546 U.S. 440, 1265 Ct. 1204, 163 L. Ed 2d 1038. In *Buckeye,* customers entered into a deferred-payment transaction with Buckeye (a check cashing company). They signed an Agreement containing provisions that required binding arbitration to resolve disputes arising out of the Agreement. The customers sued in Florida state court, alleging that Buckeye charged usurious interest rates and that the Agreement violated various Florida laws, rendering it criminal on its face. The trial court denied Buckeye's motion to compel arbitration, holding that a court rather than an arbitrator should resolve a claim that a contract is illegal and void *ab initio*. A state appellate court reversed the trial court; but, was in turn reversed by the Florida Supreme Court, which reasoned that enforcing an arbitration agreement in a contract challenged as unlawful would violate state public policy and contract law. Notably, the crux of respondents' claim to the U.S. Supreme Court was as that the Agreement as a whole (including its arbitration provision) was rendered invalid by the usurious finance charge.

The U. S. Supreme Court disagreed, holding that: "Regardless of whether it is brought in federal or state court, a challenge to the validity of a contract as a whole, and not specifically to the arbitration clause within it, must go to the arbitrator, not the court." [*Id.* at 445-446; See also

*Prima Paint Corp. v. Flood & Concklin Mfg. Co.* 388 U.S. 395, 87 S. Ct. 1801, 18 L. Ed 2d 1270]. The Supreme Court went on to say that its earlier decision in *Southland v. Keating* 465 U.S. 1, 104 S. Ct 852, 79 L. Ed. 2d 1, answers the question presented here by establishing three propositions. First, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. (See *Prima Paint*, pp. 402-404). Second, unless the challenge is to the arbitration clause itself, **the issue of the contract's validity is considered by the arbitrator** in the first instance. (*Id.*, at 403-404). (Emphasis added). Third, this arbitration law applies in state as well as federal courts. (See *Southland*, *supra* at p. 12).

    The Supreme Court's ruling above is instructive and applicable in the case at bar. The sole charge of this Court herein was to determine whether there is an agreement to arbitrate. To the extent the Court is now convinced that there is such an agreement, than the matter should be ordered to arbitration. The issues presented by way of the Agreement that either arise out of or relate to the Agreement are clearly within the arbitrator's ken. It should be the arbitrator to decide any potential claim of waiver or any claim that the contract is void or that it is unconscionable. All such claims are defenses to the enforcement of the contract and claims that can be asserted by Plaintiff at arbitration and are within the arbitrator's province.

    A recent U. S. Supreme Court case confirms the above principal. In *Preston v. Ferrer* (2008) 128 S. Ct. 978; 169 L. Ed. 2d 917, the Court determined whether the Act overrides not only state statutes that refer certain state-law controversies initially to a judicial forum, but also state statutes that refer certain disputes initially to an administrative agency. In *Preston*, the respondent, a television artist, brought an action against petitioner, an entertainment industry attorney, seeking to enjoin arbitration concerning whether the attorney was owed fees based on whether the attorney was an unlicensed talent agent. Upon the grant of a writ of *certiorari*, the attorney appealed a judgment of the Court of Appeal of California, which held that a state labor agency had exclusive jurisdiction over the dispute. The artist contended that the dispute concerning whether the attorney acted as an unlicensed talent agent rather than as a personal manager was within the exclusive jurisdiction of the state agency pursuant to the California

Talent Agencies Act (TAA), California Labor Code 1700, et. seq, regardless of an arbitration provision in the parties' contract.

The U. S Supreme Court disagreed stated that:

> When parties agree to arbitrate all questions arising under a contract, the Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq, supersedes state laws lodging primary jurisdiction in another forum, whether judicial or administrative.)....A recurring question under §2 is who should decide whether" grounds...exist at law or equity" to invalidate an arbitration agreement...In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-404, 87 S. Ct. 1801, 18, L. Ed., 2d 1270, which originated in federal court, this Court held that attacks **on an entire contract's validity,** as distinct from attacks on the arbitration clause alone are **within the arbitrator's ken.** (Id. at p. 981). (Emphasis added).

Moreover, and significantly, the court in *Preston* found that it was therefore the function of an arbitrator rather than the agency to decide whether the attorney violated the TAA by acting as an unlicensed talent agent, since the applicability of the FAA foreclosed state legislative attempts to undercut the enforceability of the arbitration agreement:

> As this Court recognized in *Southland Corp.* v. *Keating*, 465 U.S. 1, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984), the Federal Arbitration Act (FAA or Act), 9 U.S.C. § 1 *et seq.* (2000 ed. and Supp. V), establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution. The Act, which rests on Congress' authority under the Commerce Clause, supplies not simply a procedural framework applicable in federal courts; it also calls for the application, in state as well as federal courts, of federal substantive law regarding arbitration. (465 U.S., at 16). More recently, in *Buckeye Check Cashing, Inc.* v. *Cardegna*, 546 U.S. 440, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006), the Court clarified that, when parties agree to arbitrate all disputes arising under their contract, questions concerning the **validity of the entire contract** are to be resolved by the arbitrator in the first instance, not by a federal or state court. (*Id.* At p. 983-984). (Emphasis added).

The Court in *Preston* determined that attacks on the validity of an entire contract, as distinct from attacks on the arbitration clause are within the arbitrator's ken. (*Id.*)

In summary, it is the arbitrator who must be charged with the responsibility of deciding Plaintiff's rights under statute. (See *Preston* at p. 983-984). Given the aforementioned authority any issue of waiver must be determined by the arbitrator, and not the court.

///

///

### III. THE ISSUE OF WAIVER UNDER LABOR CODE §2802 AND §2804 MUST BE BEFORE THE ARBITRATOR GIVEN THE FACTUAL ISSUES

California Labor Code §2804 states

> Any contract or agreement, express or implied, made by any employee to waive the benefits of this article or any part thereof, is null and void, and this article shall not deprive any employee or his personal representative of any right or remedy to which he is entitled under the laws of this State.

Notably, §2804, on its face, explicitly and unequivocally precludes any contractual waiver of an employees right to indemnification for **all necessary expenses** under §2802. Nothing in the language of §2804 indicates that the prohibition on waivers is limited to certain types of expenses under §2802. [(*Desimone v. Allstate* (1999) U.S. Dist, LEXIS 20059)].

Plaintiff's principal claim in her Complaint is that Defendant violated §2802 with respect to the reimbursement of automobile expenses. (See Complaint at ¶¶ 21-27).

California Labor Code § 2802 states:

> 2802. (a) An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.
>
> (b) All awards made by a court or by the Division of Labor Standards Enforcement for reimbursement of necessary expenditures under this section shall carry interest at the same rate as judgments in civil actions. Interest shall accrue from the date on which the employee incurred the necessary expenditure or loss.
>
> (c) For purposes of this section, the term "necessary expenditures or losses" shall include all reasonable costs, including, but not limited to, attorney's fees incurred by the employee enforcing the rights granted by this section.

To demonstrate that an employer has violated §2802, a plaintiff must show that (1) he or she is an employee; (2) he or she incurred necessary expenses either in the discharge of her duties or in obeying her employer's directions; and (3) the employer failed to reimburse the Plaintiff for such expenses. [(*Grissom v. Vons Companies, Inc.*, (1991) 1. CA 4th 52, 58-59. *O'Hara v. Teamsters Union Local No. 856* 151 F3d 1152, 1157 (9th Cir. 1998)].

Clearly, there are a number of evidentiary factors that would determine whether § 2802

has been violated, as alleged by Plaintiff. These facts will necessarily determine whether there is a waivable issue under § 2804. Since these factors relate to and arise out of the Contract and will be factually driven, an arbitrator will need to make this determination after hearing the evidence.

An example of the above is no better set forth than in *Gattuso v. Harte-Hanks Shoppers, Inc.*, (2007) 42 Cal. 4th 554. There, the California Supreme Court determined that §2802 does not prohibit an employer's use of a lump-sum method to reimburse employees for work-related automobile expenses incurred provided that the amount paid is sufficient to provide full reimbursement of actual expenses necessarily incurred. (*Id.* At p. 570).

This holding has direct relevance in light of Paragraph 2 of the Agreement between the parties herein, states in relevant part:

> For all services to be rendered hereunder, Loan Originator shall be paid on a commission basis only in the amounts and at the times set forth on GEL's published commission schedules as amended from time to time. Loan originators compensation shall be paid in accordance with GEL's normal commission payroll practices in effect from time to time and shall be reported on Federal form W-2 as employee compensation.

Placing the above language within the context of the Court's holding in *Gattuso, supra,* there are underlying factual issues which will need to be determined (e.g. whether Plaintiff received any form of commission from GEL that would have compensated her for automobile expenses; or whether the contractual language: "subject to GEL's normal commission payroll practices" in force at that time covers mileage reimbursement). Although the Agreement is silent as to the reimbursement of mileage there will be an issue at arbitration as to whether "commission payroll practices" in force at that time included mileage or was in some part compensation for automobile expenses. These issues will be for an arbitrator to decide.

### IV. THE AGREEMENT CONTAINS THE REQUIREMENTS AFFORDING PLAINTIFF A FAIR OPPORTUNITY TO ADJUDICATE HER CLAIMS, INCLUDING THOSE RELATING TO "NON-WAIVABLE STATUTORY CLAIMS".

As stated by the California Supreme Court in *Gentry v. Superior Court* (2007) 42 Cal. 4th 443:

> When an employee is bound by a predispute arbitration agreement to adjudicate unwaivable statutory employment rights, the arbitration will be subject to certain minimal requirements: (1) the arbitration agreement may not limit the damages normally available

under the statute; (2) there must be discovery sufficient to adequately arbitrate their statutory claim; (3) there must be a written arbitration decision and judicial review sufficient to ensure the arbitrators comply with the requirements of the statute; and (4) the employer must pay all types of costs that are unique to arbitration. The imposition of these requirements was based on the recognition that while a party compelled to arbitrate such rights does not waive them, but merely submits to their resolution in an arbitral rather than a judicial forum . . . arbitration cannot be misused to accomplish a de facto waiver of these rights. The above requirements are necessary to enable an employee to vindicate unwaivable rights in an arbitration forum. (Id. at p. 457).

Notably the above requirements are met in the instant case. First, the Agreement does not limit damages. Second, although the arbitration agreement is silent as to discovery rights this does not mean they are limited. Any discovery will be pursuant to the Commercial Arbitration Rules of the American Arbitration Association. Those rules do not limit discovery and provide sufficient rights for the exchange of information, as stated in Rule 21:

Exchange of Information

(a) At the request of any party or at the discretion of the arbitrator, consistent with the expedited nature of arbitration, the arbitrator may direct

    i) the production of documents and other information, and

    ii) the identification of any witnesses to be called.

(c) The arbitrator is authorized to resolve any disputes concerning the exchange of information.

Third, the Agreement at ¶7.1 provides for sufficient safeguards for the arbitration such as a transcript, a requirement that the award provide for the arbitrator's findings of fact and conclusions of law, and provides that the award can be modified or vacated upon petition brought within 30 days by a court of competent jurisdiction. Lastly there is no requirement that the cost of arbitration be borne unfairly by the employee. In short, there are sufficient safeguards in the subject arbitration agreement that provide assurances that any claimed "unwaivable" statutory rights will be fairly adjudicated in the arbitration forum and that the arbitration process will not be misused.

///

## V. ANY CONTRACTUAL LANGUAGE THAT MAY RUN CONTRARY TO PUBLIC POLICY, CAN BE SEVERED FROM THE AGREEMENT

The Agreement also has a severability clause in ¶12, which reads:

> 12. Severability. The provisions of this Agreement are severable, and if one or more provisions thereof are found to be unenforceable in whole or in part, the remaining provisions and any partially enforceable provisions will nevertheless be binding and enforceable to the full extent of the law.

Any issue with respect to the governing law provision in the Agreement providing that enforcement of the Agreement shall be governed by the laws of the State of Georgia and venue shall be in Cobb County of Gwinnett County Superior Court, State of Georgia can be resolved by the arbitrator severing the clause. Clearly, an arbitrator has power to do so.

In *Armendarez v. Foundation Heath Psychcare Services,* (2000) 24 Cal. 4th 83 employees contended that the presence of various unconscionable provisions or provisions contrary to public policy leads to the conclusion that the arbitration agreement as a whole cannot be enforced. The employer contends that, insofar as there are unconscionable provisions they could be severed and the rest of the Agreement could be enforced.

The California Supreme Court stated that: Two reasons for severing or restricting illegal terms rather than voiding an entire contract appear implicit in case law. The first is to prevent parties from gaining undeserved benefit or suffering undeserved detriment as a result of voiding the entire agreement — particularly when there has been full or partial performance of the contract. Second, more generally, the doctrine of severance attempts to conserve a contractual relationship if to do so would not be condoning an illegal scheme. The overarching inquiry is whether the interests of justice would be furthered by severance. (*Id.* at p. 125).

> Courts are to look to the various purposes of the contract. If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced. If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate. (See Id. at p 124).

In this case, the Agreement is not unconscionable. The venue and choice of law clause

does not go to the central purpose of the Agreement, which defines the rights and obligations of the of the parties during the employment relationship. It relates strictly to what state law will apply. As set forth above, the Arbitration paragraph has more than sufficient safeguards to ensure that any alleged unwaivable statutory employment rights are fairly and properly adjudicated.

## VI. CONCLUSION

Challenges to the validity of the underlying contract (i.e., ambiguous, unclear, or lack of consideration) are not considered in determining arbitrability, nor are defenses as to the contract, such as waiver. The only question here is whether the parties knowingly agreed to arbitrate disputes under the contract. Since in this case the arbitration clause is deemed separable from the balance of the contract and is enforced, **despite defenses to the underlying contract** (See *Prima Paint Corp v. Flood & Conklin Mfg* (1967) 388 US 395, 403-404. The issue of waiver, choice of law and application of the contractual terms are for the arbitrator. For the above stated reasons, it is respectfully requested that the Court grant GLOBAL's motions.

Dated: July 28, 2008

ROPERS, MAJESKI, KOHN & BENTLEY

By: _____
GREGORY M. GENTILE
Attorneys for Defendant
GLOBAL EQUITY LENDING INC.