UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOLORES A. ARREGUIN, for herself and other members of the general public similarly situated,<br><br>                Plaintiff,<br>    v.<br>GLOBAL EQUITY LENDING, INC., a Georgia Corporation; and DOES 1 through 10, Inclusive,<br><br>                Defendant.<br>_____/ | No. C 07-06026 MHP<br><br>**MEMORANDUM & ORDER**<br><br>**Re: Defendant's Motion to Enforce a Forum Selection Clause and to Dismiss for Improper Venue Under FRCP Rule 12(b)(3); Defendant's Motion to Compel Arbitration** |

        Plaintiff Dolores Arreguin ("Arreguin"), who lives and works in California, brings this diversity action against her former employer defendant Global Equity Lending, Inc. ("Global"), a corporation organized and existing under the laws of the state of Georgia. As part of her employment duties as a loan origination officer, plaintiff used her personal automobile to visit customers, and she now contends that defendant's refusal to reimburse her for automobile expenses is unlawful. Plaintiff asserts, on behalf of herself and others similarly situated, causes of action for violations of California Labor Code section 2802, California Business and Professions Code sections 17200 et seq., and for declaratory relief.

        She alleges in her complaint that California Labor Code section 2802(a), which states, "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties . . .," is "broadly remedial in

nature" and "serve[s] an important public interest in establishing minimum working conditions and standards in California." Complaint ¶ 15. Because "defendants unlawfully refused to reimburse for mileage," and thereby "wrongfully and illegally failed to compensate plaintiffs for their actual expenses incurred in the course and scope of employment," plaintiff alleges that defendants are in violation of California Labor Code section 2802. Id. ¶ 13. Plaintiff alleges further that violation of section 2802 constitutes unfair business practices in contravention of California Business and Professions Code section 17200 et seq. Id. ¶ 29.

Now before the court are defendant's motions (1) to enforce a forum selection clause brought pursuant to Federal Rule of Civil Procedure ("FRCP") Rule 12(b)(3) to dismiss for improper venue, and (2) to compel arbitration. Having considered the arguments of the parties, including all the supplemental briefing requested by the court and submitted by the parties, and for the reasons stated below, the court enters the following memorandum and order.

BACKGROUND

Plaintiff Arreguin was employed by defendant Global from July 29, 2002 through May 31, 2007. Arreguin Dec. ¶ 1; Croteau Dec. ¶ 17. Her duties included originating loans for Global and as part of her responsibilities, she was required to drive her car to customers and potential customers to have them sign loan documents. Arreguin Dec. ¶ 2. Arreguin currently resides in Sacramento, California, and nearly all of the loan business she conducted on behalf of Global was in California. Id. ¶¶ 2, 4. Based on her employment with Global, Arreguin believes there are over 20,000 past and present loan agents who worked for Global in the State of California. Id. ¶ 5.

At issue in defendant's motions are two provisions of the parties' employment agreement—one involving a judicial forum selection clause and the other involving an arbitration clause. The judicial forum selection clause states:

> 11. Governing Law. The enforcement of this Agreement shall be governed by the laws of the State of Georgia and venue shall be in Cobb County or Gwinnett County Superior Court; State of Georgia.

Ain Dec., Exh. 4 at 24, ¶ 11; see also Croteau Dec., Exh. A, ¶ 11.[1] The arbitration clause states:

2

1    7. <u>Arbitration of Grievances</u>

7.1 <u>General</u>. The Parties agree that, except as specifically provided to the contrary in this Agreement, any controversy, claim or dispute arising out of or relating to this Agreement ("Grievance"), between [plaintiff], on the one part, and [defendant Global] . . . , on the other part shall be resolved exclusively by arbitration in accordance with this Paragraph 7. . . . All Grievances . . . shall be resolved by arbitration in accordance with the Commercial Arbitration Rules ("Rules") of the American Arbitration Association then in effect, except that, or in addition to such Rules: i) in order to assure the neutrality and impartiality of the arbitrator(s), and to preserve the confidentiality of proprietary information, the arbitrator(s) shall not be any present or past owner, officer, director, employee, consultant, contractor, agent, attorney, or other representative of any mortgage company, mortgage broker, mortgage banker, or of any affiliate of any of them; ii) the locale where the arbitration shall be held is the principal business location of [defendant Global] in Norcross, Georgia; iii) a transcript shall be made on the proceeding; and iv) the arbitrator's(s') award shall state their findings of fact and conclusions of law. The award, including such findings and conclusions may be reviewed, vacated, modified, or corrected upon application or petition of any Party brought within thirty (30) days after the date of the award, by a court of competent jurisdiction . . .

7.2 . . . except as specifically provided to the contrary in this Agreement, this paragraph 7 is and shall be the Party's exclusive remedy for any Grievance arising out of or relating to this Agreement, or the breach thereof. Except as specifically provided to the contrary in this Agreement, the Parties expressly waive the right to litigate in a judicial forum Grievances and waive the right to trial by jury.

7.3 . . . The Parties expressly authorize the Arbitrator(s) to fashion and award any type of remedy that could be awarded by a court, including such equitable or extraordinary remedies as temporary and permanent injunctive relief.

7.4 <u>Extraordinary Relief.</u> The Parties agree that [defendant Global] has the right to seek preliminary and temporary restraining orders, injunctions and other extraordinary relief . . . under Paragraph 6 of this Agreement [pertaining to such issues as non-competition, protection of confidential and proprietary information, and indemnification] without complying with this Paragraph 7.

Ain Dec., Exh. 4 at 23–24, ¶¶ 7, 7.1; <u>see also</u> Croteau Dec., Exh. A, ¶¶ 7, 7.1.

The parties' agreement also contains a severability clause:

12. <u>Severability.</u> The provisions of this Agreement are severable, and if one or more provisions thereof are found to be unenforceable in whole or in part, the remaining provisions and any partially enforceable provisions will nevertheless be binding and enforceable to the full extent of the law.

Ain Dec., Exh. 4 at 24, ¶ 12; <u>see also</u> Croteau Dec., Exh. A, ¶ 12.

Briefs on the motions to dismiss and to compel arbitration were initially filed in January, February and March of 2008. The matter subsequently came before this court for oral argument on May 12, 2008. At that hearing, the court determined that whether Arreguin executed the employment agreement, and therefore, whether she consented to the judicial forum selection and

3

1 arbitration clauses contained within the agreement were material facts in genuine dispute. To assist
2 in resolving the dispute, the court held defendant's motions in abeyance and ordered the parties to
3 engage in limited discovery targeted at the issue of whether Arreguin executed the employment
4 agreement. That discovery having now been completed, and supplemental briefs having been filed,
5 the court determines that Arreguin executed the employment agreement, with a handwritten
6 signature, on July 19, 2002, ten days prior to her official start date. Ain Dec., Exh. 4. Accordingly,
7 it is now undisputed that Arreguin executed an employment contract with defendant Global and
8 consented to the judicial forum selection and arbitration provisions therein.

9 Arreguin is currently 59 years old. Her education consists of a high school diploma and
10 some college courses. She receives $1,488 per month from a pension. Additionally, she had been
11 receiving $512 bimonthly in unemployment benefits which were scheduled to terminate at the end of
12 March 2008. She attests that she does "not have the financial resources to litigate this case in the
13 State of Georgia," and "does not have funds to pay for travel and accommodations in the State of
14 Georgia even if [she] wanted to litigate this case there." Moreover, she states that "[i]f this case is
15 transferred to Georgia, [she] will in all probability be required to abandon [her] claims." Arreguin
16 Dec. ¶ 4.

## DISCUSSION

### I.     Forum Selection Clause

A motion to dismiss for improper venue pursuant to Federal Rule of Civil Procedure Rule 12(b)(3) is the appropriate vehicle to seek judicial enforcement of a forum selection clause. Argueta v. Banco Mexicano S.A., 87 F.3d 320, 324 (9th Cir. 1996). The Ninth Circuit has held that under the doctrine of Erie Railroad v. Tompkins, 304 U.S. 64 (1938), federal procedural issues raised by judicial forum selection clauses significantly outweigh state interests. Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 513 (9th Cir. 1988). Therefore, federal, not state law, governs the interpretation and enforcement of forum selection clauses in diversity cases. Id.

In interpreting the scope of a forum selection clause, the Ninth Circuit has stated that such clauses can be broad enough to cover both contract and tort causes of action. Manetti-Farrow, 858

4

1  F.2d at 511, 514 (because various business and economic tort claims related in some way to rights
2  and duties enumerated in exclusive dealership contract, claims were covered by forum selection
3  clause requiring "any controversy regarding interpretation or fulfillment" of the contract to be
4  adjudicated in Italian courts). Similarly, a forum selection clause may also apply to statutory claims
5  such as those at issue here, provided that the claims are "inextricably intertwined with the
6  construction and enforcement" of the parties' agreement. Olinick v. BMG Entertainment, 138 Cal.
7  App. 4th 1286, 1294, 1299–1300 (2006) (statutory claim under California's Fair Employment and
8  Housing Act ("FEHA") fell within the scope of forum selection clause requiring "resolution of all
9  disputes arising under this Agreement" to be litigated in New York because "[i]n defending against
10 [employee]'s claim he was discriminated against and terminated on account of his age, [employer]
11 will inevitably assert its right under the Agreement to terminate [the employee] without cause").

12      Here, paragraph 11 of the parties' employment contract provides that "[t]he enforcement of
13 this Agreement shall be governed by the laws of [Georgia] and venue shall be in [certain Georgia
14 state courts]." Ain Dec, Exh. 4. The language of this forum selection clause is broad enough to
15 encompass not only claims for breach of contract, but also tort claims such as wrongful termination.
16 Had those been plaintiff's claims, the forum selection clause would apply. Plaintiff's claim,
17 however, asserts a statutory entitlement under California Labor Code section 2802 to receive
18 reimbursement for job-related automobile expenses. This statutory right cannot be waived by
19 contract. Cal. Lab. Code § 2804 ("Any contract or agreement, express or implied, made by any
20 employee to waive the benefits of this article or any part thereof, is null and void, and this article
21 shall not deprive any employee or his personal representative of any right or remedy to which he is
22 entitled under the laws of this State"). Unlike Manetti-Farrow and Olinick, the dispute here does not
23 concern "enforcement" of the agreement and does not otherwise require "construction" or
24 "interpretation" of the agreement. Whether the parties' employment agreement does or not does not
25 provide for reimbursement and whether the defendant-employer can avoid reimbursement by
26 claiming that the agreement governs all issues of compensation and financial liability, are irrelevant
27 issues. The statutory right to reimbursement under Labor Code section 2802 exists regardless of
28 what is provided for in the agreement.

Defendant's motion to dismiss for improper venue under FRCP Rule 12(b)(3) is **DENIED**. Because the parties' dispute does not fall within the scope of the forum selection clause, the court need not address the separate issue of whether the clause is unenforceable because, for example, it is unreasonable or the product of fraud or overreaching.

II.   Arbitration Clause

Defendant asserts and plaintiff does not dispute that defendant's motion to compel arbitration is governed by the Federal Arbitration Act ("FAA") because the employment agreement is a "contract evidencing a transaction involving commerce." 9 U.S.C. § 2; see also Circuit City Stores, Inc. v. Adams, 532 U.S. 105 (2001) (FAA excludes employment contracts of only transportation workers, abrogating Craft v. Campbell Soup Co., 177 F.3d 1083 (9th Cir. 1999), which held that FAA excluded *all* employment contracts).

The Act provides that contractual agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." Id.  The Act "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24 (1983).  The FAA was designed to "create[] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Id.

As with the court's analysis of the forum selection clause, analysis of the arbitration clause begins with the question of whether the parties' dispute is encompassed within the scope of the clause. 9 U.S.C. § 3 (as a threshold matter, court must first be "satisfied that the issue involved in such suit or proceeding is referable to arbitration" under the parties' agreement). Doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. Moses, 460 U.S. at 24.

Paragraph 7.1 of the employment agreement states, "any controversy, claim or dispute arising out of or relating to this Agreement ("Grievance"), between [plaintiff], on the one part, and [defendant Global] . . . , on the other part shall be resolved exclusively by arbitration . . ." It is undisputed that plaintiff's claim for violation of Labor Code section 2802 "arises out of" or "relates

to" her agreement and the employment relationship created by that agreement. See e.g., Davis v. O'Melveny & Myers, 485 F.3d 1066, 1071 (9th Cir. 2007) (no dispute that plaintiff's federal and state claims for failure to pay overtime and for missed rest and meal periods "arise out of," or "relate to," her employment for purposes of the scope of the agreement to arbitrate).

The court pauses here to note that the language of the arbitration clause in paragraph 7.1 ("any controversy, claim or dispute arising out of or relating to this Agreement") is broader than the language of the forum selection clause in paragraph 11 ("enforcement of this Agreement"). Accordingly, that the parties' dispute falls outside the scope of the forum selection clause does not necessarily imply that the dispute also falls outside the scope of the arbitration clause. The court's conclusion that the parties' dispute is not covered by the forum selection clause is not inconsistent with the court's conclusion that the same dispute is nevertheless covered by the arbitration clause.

The fact that plaintiff's claim asserts a statutory entitlement does not place plaintiff's claim beyond the reach of arbitration. It is well-established that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the Federal Arbitration Act. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991) (statutory claim of age discrimination under the Age Discrimination in Employment Act ("ADEA") subject to arbitration). When agreeing to arbitrate a statutory claim, "a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." Id.

Nevertheless, "parties that agree to arbitrate statutory claims still are entitled to basic procedural and remedial protections so that they can effectively realize their statutory rights." Ting v. AT&T, 319 F.3d 1126, 1151 (9th Cir. 2003); see also Davis, 485 F.3d at 1082. As described by the D.C. Circuit in Cole v. Burns Int'l Security Services, 105 F.3d 1465, 1482 (D.C. Cir. 1997), when "public rights" such as those protected under California's Labor Code are subject to a pre-dispute arbitration agreement, the arbitration arrangement will be upheld if it "(1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum." Both the Ninth Circuit and the California Supreme

7

1  Court have cited to this portion of Cole with approval.  See Ting, 319 F.3d at 1151; Armendariz v.
2  Foundation Health Psychcare Services, Inc., 24 Cal. 4th 83, 102, 114 (2000) (describing the five
3  Cole factors as "minimum requirements" for the arbitration of unwaivable statutory claims).

4  In addition to the Cole factors, "generally applicable [state-law] contract defenses, such as
5  fraud, duress, or unconscionability may be applied to invalidate arbitration agreements without
6  contravening [the FAA]."  Ting, 319 F.3d at 1152.  In California, a contract or clause is
7  unenforceable if it is both procedurally and substantively unconscionable, but the two need not be
8  present in the same degree.  Armendariz, 24 Cal. at 114.  A sliding scale is used—"the more
9  substantively oppressive the contract term, the less evidence of procedural unconscionability is
10 required to come to the conclusion that the term [such as an arbitration clause] is unenforceable, and
11 vice versa."  Id.  To be clear, plaintiff's attack and the court's analysis is directed at the
12 unconscionability of the arbitration provision of the agreement, rather than the agreement as a
13 whole.  This is a question for the court, not the arbitrator to decide.  See Nagrampa v. Mailcoups,
14 Inc., 469 F.3d 1257, 1263–64 (9th Cir. 2006).

15 With these legal standards in mind, the court now turns to an examination of the arbitration
16 clause at issue in this case.  Beginning with the five Cole factors, the court notes that most of the
17 minimum requirements are satisfied.  First, the agreement provides for neutral arbitration and
18 specifically precludes parties with potential conflicts of interest from serving as the arbitrator.  Ain
19 Dec., Exh. A, ¶ 7.1(I) ("in order to assure neutrality and impartiality of the arbitrator(s) . . ., the
20 arbitrator(s) shall not be" various individuals such as officers, directors, attorneys, or agents of any
21 mortgage company, including defendant Global).  Second, the arbitration arrangement allows for
22 more than minimal discovery.  Id. ¶ 7.1 (providing that arbitration is conducted "in accordance with
23 the Commercial Arbitration Rules of the American Arbitration Association," which in turn provides
24 for the "Exchange of Information" under Rule 21).[2]  Third, by requiring that "a transcript shall be
25 made on the [arbitration] proceeding" and that "the arbitrator's(s') award shall state their findings of
26 fact and conclusions of law," the agreement satisfies the requirement that the award be sufficiently
27 documented in written form.  Id. ¶¶ 7.1(iii), (iv).  Memorialization of the arbitration proceedings
28 facilitates subsequent judicial review, which is also provided for in the arbitration agreement.  Id. ¶

8

7.1 ("[t]he award . . . may be reviewed, vacated, modified, or corrected . . . by a court of competent jurisdiction"). Fourth, the agreement expressly states that all of the types of relief that would otherwise be available in court, "including such equitable or extraordinary remedies as temporary and permanent injunctive relief," are available in arbitration. Id. ¶ 7.3. Moreover, the agreement in this case is silent as to class arbitration and does not attempt to expressly prevent the arbitrator from consolidating claims of different employees or deprive the arbitrator of the power to hear the arbitration as a class action. In cases like the present one which are asserted as purported class actions, courts have been wary of class arbitration waivers. See Gentry v. Superior Court, 42 Cal. 4th 443 (2007) (holding that class arbitration waiver in employment agreement is unenforceable if court determines that class arbitration would be significantly more effective way of vindicating rights than individual arbitration).

The fifth and final Cole factor is not met. By locating the forum of arbitration in Norcross, Georgia, defendant's principal business location, Ain Dec., Exh. A, ¶ 7.1(ii), the arbitration arrangement imposes on the employee unreasonable costs as an condition of access to the arbitration forum. The plaintiff-employee in this case is a California resident who was hired in California to perform work for the defendant-employer in California. The cost of arbitration in this case is unreasonable not only in absolute terms (because the employee must travel a significant distance from California to arbitrate her claims in a state with which she has little or no connection), but is also unreasonable in relative terms (because compared to the employee, the employer is entitled to arbitrate in its own backyard and need not travel at all).

Besides failing to meet one of the Cole factors, the arbitral forum selection provision is also substantively unconscionable. Courts have found "place and manner" provisions in an arbitration clause to be unconscionable where they impose financial hardship against the party with fewer resources, thereby effectively precluding them from litigating their claims, and where the forum selection provision has "no justification other than as a means of maximizing an advantage over the opposing party." Bolter v. Superior Court, 87 Cal. App. 4th 900, 909 (2001) (place and manner restrictions unconscionable where small "Mom and Pop" franchisees located in California were required to travel to Utah to arbitrate their claims against an international carpet-cleaning

9

franchisor). An additional feature of the arbitration provision is also substantively unconscionable because it is non-mutual. "Where the party with stronger bargaining power," such as defendant Global in this case, "has restricted the weaker party to the arbitral forum, but reserved for itself the ability to seek redress in either an arbitral or judicial forum, California courts have found a lack of mutuality supporting substantive unconscionability." Nagrampa, 469 F.3d at 1285. Here, the arbitration provision requires employees to submit all claims to arbitration, but reserves the right of the employer to obtain injunctive or other equitable relief in a judicial forum for certain claims including non-competition and disclosure of confidential information. Compare Ain Dec., Exh. A, ¶ 7.2 with id. ¶ 7.4. Substantially identical, non-mutual arbitration provisions have been found to be substantively unconscionable, especially where, as in this case, the claims reserved to the employer for judicial resolution are the claims most likely to be asserted by the employer against the employee. Martinez v. Master Protection Corp., 118 Cal. App. 4th 107, 115 (2004).

Having found the arbitration clause to be substantively unconscionable, the court must also consider whether there is procedural unconscionability. In this case, the contract was drafted by a party with greater bargaining power and was presented on a take-it-or-leave-it basis. Under California's sliding scale test for unconscionability, these types of adhesion contracts present the minimal procedural unconscionability sufficient to render an arbitration provision unconscionable where there is sufficient substantive unconscionability to tip the scale. As already discussed, the substantive unconscionability in this case is not slight and is enough, given the amount of procedural unconscionability, to conclude that the arbitration clause is unconscionable.

The consequence of finding unconscionability does not require the court to invalidate the entire arbitration clause. The arbitration clause is not so permeated by unconscionability that it cannot be cured by severance, which is expressly provided for in the agreement. Ain Dec., Exh. A, ¶ 12. While certain portions of the arbitration clause are unconscionable and unenforceable, many other provisions are not. The court concludes that paragraphs 7.1(ii) requiring arbitration to occur in Norcoss, Georgia, as well as paragraphs 7.2 and 7.4 creating non-mutual arbitration of claims are unenforceable and severed from the remaining provisions.

With the exception of the severed provisions, the court, because it has found that the parties' dispute concerning reimbursement of automobile expenses under California Labor Code section 2802 is within the scope of the provision calling for arbitration of "any controversy, claim or dispute arising out of or relating to the Agreement," must direct the parties to proceed to arbitration.  9 U.S.C. § 3 (if it is "satisfied that the issue involved in [the] suit or proceeding is referable to arbitration . . . [the court] *shall* on application of one of the parties stay the trial of the action until such arbitration has been had"); see also Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed").  Subject to the limitations described in this order, defendant's motion to compel arbitration is **GRANTED** and this action is **STAYED** pending arbitration.  The parties shall select a mutually agreeable arbitral forum within California consistent with the provisions of paragraph 7 of the agreement and this order.

CONCLUSION

For the reasons stated above, the court **DENIES** defendant's motion to enforce a forum selection clause and to dismiss for lack of improper venue under Rule 12(b)(3).  The court **GRANTS** defendant's motion to compel arbitration.  The parties shall select the arbitral forum for this dispute in accordance with the above within sixty (60) days of the date of this order and notify the court of same.  This action is **STAYED** pending arbitration.

**IT IS SO ORDERED.**

Dated: August 29, 2008

_____
MARILYN HALL PATEL
United States District Court Judge
Northern District of California

11

ENDNOTE

1.      In addition to a judicial forum selection clause, paragraph 11 of the parties' agreement also contains a choice of law clause calling for application of Georgia law. Both parties have consistently argued in the context of the two motions presently before the court that where state law applies, California, not Georgia law controls. The court concludes that the parties through their course of conduct have waived the portion of paragraph 11 that specifies the application of Georgia law. See Nagrampa v. Mailcoups, Inc., 469 F.3d 1257, 1267 (9th Cir. 2006).

2.      Rule 21 of the Commercial Arbitration Rules of the American Arbitration Association states, in part: "(a) At the request of any party or at the discretion of the arbitrator, consistent with the expedited nature of arbitration, the arbitrator may direct (i) the production of documents and other information, and (ii) the identification of any witnesses to be called."